MECHANICAL CONTRACTORS ASSOCIATION OF CINCINNATI
ET AL., APPELLEES AND CROSS-APPELLANTS, *v.*
THE STATE OF OHIO ET AL.,
APPELLANTS AND CROSS-APPELLEES.

(No. 79-1685—Decided December 23, 1980.)

*Messrs. Topper, Alloway, Goodman, DeLeone & Duffey, Mr. John J. Duffey, Price Co., L.P.A.,* and *Mr. Edwin C. Price, Jr.,* for appellees and cross-appellants Mechanical Contractors Association of Cincinnati et al.

*Mr. William J. Brown,* attorney general, *Mr. Donald J. Guittar* and *Mr. Harry N. Kandel,* for appellants and cross-appellees the state of Ohio and Director of Transportation.

*Messrs. Knepper, White, Arter & Hadden, Mr. Roger L. Sabo* and *Mr. Richard A. Frye,* for appellant and cross-appellee Ohio Contractors Association.

PAUL W. BROWN, J.   Two issues are raised in the instant cause. The first is whether the Director of Transportation or

the Director of Administrative Services is authorized to enter into contracts for the construction of roadside rest area facilities. The second is whether the Director of Transportation, if he has the authority to enter into these contracts, must comply with R. C. 153.02 and 153.03 in making the awards.

Turning to the pertinent Revised Code provisions, we first look to R. C. 123.01. R. C. 123.01(A) provides that the Director of Administrative Services shall have the power to make contracts for, and supervise the construction, improvement or repair of all public state buildings, with a few exceptions. The exceptions permit the directors of Public Welfare, Mental Health and Mental Retardation, Rehabilitation and Correction, and the Youth Commission, and the boards of trustees of educational and benevolent institutions, to contract in their own names for certain kinds of work. No exception is made for the Director of Transportation in subdivision (A). Subdivision (B), however, provides, in part, that R. C. 123.01 shall not interfere with the power of the Director of Transportation in "preparing plans and specifications for and constructing such buildings as he may require in the administration of his department." Thus, we must determine if the challenged roadside rest area facilities are required in the administration of the Department of Transportation.

Appellees contend that, under the exceptions of R. C. 123.01(B), the Department of Transportation may construct only buildings used to house departmental staff or for storage. Appellants argued, and the Court of Appeals correctly concluded, that the language in R. C. 123.01(B) is very broad, and refers to any building that is determined necessary to the administration of the Department of Transportation.

Although there are no statutes expressly granting the Director of Transportation the authority to contract for construction of roadside rest area facilities, there are several statutes conferring duties on him with respect to rest area facilities. R. C. 5515.07 requires the Director of Transportation to adopt and promulgate rules and regulations covering the use and control of rest areas. R. C. 5529.01 provides that portions of the highway right-of-way no longer needed for roads may be used by the director for roadside parks. R. C. 5529.03 provides for the acquisition of property by the director

for restroom facilities and recreation areas adjacent to highways. R. C. 5529.04 grants the director the authority to "enter into agreements with the secretary of commerce of the United States***relating to***the establishment of publicly owned and controlled rest and recreation areas and sanitary and other facilities necessary to accommodate the traveling public***." In addition, R. C. 5525.16 (dealing with the registration of construction bids), R. C. 5525.17 (dealing with the failure of a contractor to complete work), and R. C. 5525.19 (dealing with the costs and expenses of construction) all refer to R. C. Chapter 5529, which governs roadside improvements. Taken together, these statutes conferring duties on the Director of Transportation with respect to roadside rest area facilities compel the conclusion that such facilities are buildings required in the administration of the Department of Transportation within the meaning of R. C. 123.01(B). Therefore, pursuant to R. C. 123.01(B), the Director of Transportation, and not the Director of Administrative Services, is authorized to contract for the construction of Project 761 and similar roadside rest area facilities.[1]

We now address the second issue raised in this cause— Must the Director of Transportation comply with the separate contract requirements of R. C. 153.02 and 153.03 in awarding these contracts?[2]

R. C. 153.02 provides:

"Every department, board, bureau, commission, body, or person charged with the duty of preparing plans, specifications, and blueprints for erection***of any building in the state, by the state,***shall, when the entire cost of the erection***is to exceed one thousand dollars, prepare separate

---

[1] Appellants contend that roadside rest area facilities are highway appurtenances and that R. C. 5501.01(C) and 5501.31 specifically authorize the Director of Transportation to build appurtenances. Therefore, appellants argue, the director has specific authority to build roadside rest area facilities. Because of our resolution of the instant cause, it is unnecessary for us to determine whether roadside rest area facilities are highway appurtenances.

[2] Appellant, Ohio Contractors Association, contends that if R. C. 153.02 and 153.03 are found to be applicable to the Director of Transportation, we must go further and determine whether the director may accept a lower combined price for separate contracts by the same contractor. We decline to address this contention, however, since no such factual situation is presented in the instant cause.

plans, specifications, and blueprints for each of the following branches or classes of work to be performed and all work kindred thereto:

"(A) Plumbing and gas fitting;

"(B) Steam and hot-water heating, ventilating apparatus, and steam-power plant;

"(C) Electrical equipment.

"Such plans, specifications, and blueprints must be so prepared and drawn as to permit separate and independent proposals and bids upon each of the classes of work set forth in divisions (A), (B), and (C) of this section."

R. C. 153.03 provides:

"Every department, board, bureau, commission, body or person charged with the duty of awarding or entering into contracts for the erection***of any building in the state, by the state,***shall, when the entire cost of the erection***is to exceed one thousand dollars, award the respective work specified in divisions (A), (B), and (C) of section 153.02 of the Revised Code separately to responsible and reliable individuals, firms or corporations."

The appellant state contends that R. C. Chapter 5525, which deals with the entering into of construction contracts by the Director of Transportation, is specific legislation and should control to the exclusion of R. C. 153.02 and 153.03. We disagree. There is no irreconcilable conflict between R. C. Chapter 5525 and R. C. 153.02 and 153.03. R. C. Chapter 5525 is silent concerning whether construction contracts entered into by the director should be in a lump sum for the entire job or separate for each mechanical trade involved. R. C. 153.02 and 153.03 require all contracts for the construction of state buildings, by the state, to be separate for each mechanical trade involved. It is a general rule of statutory construction, codified in R. C. 1.51, that where there is no irreconcilable conflict, special and general provisions should be construed so as to give effect to both provisions. *Cincinnati* v. *Conner* (1896), 55 Ohio St. 82; *State* v. *Frost* (1979), 57 Ohio St. 2d 121.

In addition, no exception is made in R. C. 153.02 and 153.03 for the Director of Transportation, although three other statutes in R. C. Chapter 153 specifically exclude the

director in different contexts.[3] Applying the rule of statutory construction, *expressio unius est exclusio alterius,* the fact that the General Assembly specifically excluded the director from some provisions of R. C. Chapter 153 implies that he was meant to be included in other applicable provisions such as R. C. 153.02 and 153.03. Moreover, in *Columbus Building & Const. Trades Council* v. *Moyer* (1955), 163 Ohio St. 189, 199, we held that the provisions of what are presently R. C. 153.02 and 153.03 are "positive, clear and mandatory." Therefore, we hold that the Director of Transportation must comply with R. C. 153.02 and 153.03 when seeking bids and awarding contracts for the construction of roadside rest area facilities.

For the foregoing reasons, the judgment of the Court of Appeals is affirmed.

*Judgment affirmed.*

CELEBREZZE, C. J., W. BROWN and SWEENEY, JJ., concur.

LOCHER, HOLMES and DOWD, JJ., dissent.

HOLMES, J., dissenting. While I concur with paragraph one of the syllabus, I am compelled to dissent from paragraph two of the syllabus and the judgment of the court because it is my view that neither R. C. 153.02 nor 153.03 is applicable to the present dispute.

R. C. 5501.01 states:

"As used in Chapters 5501., 5503., 5511., 5512., 5513., 5515., 5516., 5517., 5519., 5521., 5523., 5525., 5527., 5528., 5529., 5531., 5533., and 5535. of the Revised Code:

"* * *

"(C) 'Road' or 'highway' includes bridges, viaducts, grade separations, appurtenances, and approaches on or to such road or highway.

"* * *."

In *State, ex rel. Walter,* v. *Vogel* (1959), 169 Ohio St. 368, this court ruled that lighting systems on a limited access highway were appurtenances within the meaning of the

---

[3] R. C. 153.12, 153.13, and 153.14, which deal with state building contracts, exempt the Director of Transportation from their requirements.

statute. This court relied on the fact that lighting systems were factors that contribute to the safety of highways.

Likewise, roadside rest areas contribute to the safety of interstate highways by giving motorists the opportunity to stop and rest during their travels. The fact that the state has sought to construct these facilities with restrooms does not change this conclusion, for the more attractive a rest area, the more likely its use by motorists.

Because of their contribution to the safety of highway travel, I would find that the facilities in question are appurtenances within the meaning of R. C. 5501.01(C). Therefore, the contracting for their construction is controlled by the specific provisions contained in R. C. Chapter 5525, rather than the general provisions in R. C. 153.02 and 153.03.

Further, the intent of the General Assembly can be seen from an examination of the method of state funding for such projects.[4] A portion of the funding comes from fees levied in connection with the registration of motor vehicles. R. C. 5529.05. Other funding comes from the Highway Operating Fund, the Highway Obligations Construction Fund, and as such, is appropriated for a specific highway purpose. Am. Sub. H. B. No. 656 (113th General Assembly); Am. Sub. S. B. No. 255 (113th General Assembly). See, also, Section 5a of Article XII of the Ohio Constitution.

With the significant number of new rest stop facilities planned for Ohio pursuant to recent legislation, the Director of Transportation should be permitted to contract for their construction pursuant to Chapter 5525, which sections could well provide the more economical method for the provision of these facilities.

Accordingly, I would reverse, in part, the judgment of the Court of Appeals, and affirm that of the Court of Common Pleas.

LOCHER and DOWD, JJ., concur in the foregoing dissenting opinion.

---

[4] The state contributes 10 percent of the cost of such projects. The federal government contributes the other 90 percent.