THE STATE, EX REL. CONNORS ET AL., APPELLANTS, *v.* OHIO DEPT. OF TRANSPORTATION ET AL., APPELLEES.

(No. 81AP-828—Decided October 21, 1982.)

*Messrs. Knepper, White, Arter & Hadden* and *Mr. Roger L. Sabo,* for appellants.

*Mr. William J. Brown,* attorney general, *Mr. Donald J. Guittar, Mr. Perry R. Silverman* and *Mr. Halstead L. Stettler,* for appellees.

STRAUSBAUGH, J. This is an appeal from a judgment of the Court of Common Pleas of Franklin County finding that plaintiffs had no standing to seek declaratory and injunctive relief. Plaintiffs had sought to enjoin the defendants, Ohio Department of Transportation and its Director, David L. Weir, from performance of a construction contract containing a provision requiring a fixed percentage of subcontracting to be given only to minority contractors.

Plaintiffs set forth the following assignment of error:

"In an action to enjoin construction of a project by the Ohio Department of Transportation containing an invalid bid condition dealing with minority business enterprises, the Court of Common Pleas erred in concluding that all of the following lacked standing to seek declaratory and injunctive relief:

"(1) A contractors association whose members either are qualified to bid with the Department and who did bid on such projects, or whose members sought to obtain work as subcontractors on such projects;

"(2) Contractors qualified to bid on Department projects who purchased plans and who did bid as prime contractors;

"(3) Contractors qualified to bid on Department projects who purchased plans and sought to obtain contracts as subcontractors;

"(4) Taxpayers of the State of Ohio who are specially affected by the bid conditions."

The Ohio Department of Transportation (hereinafter "ODOT") is in charge of the construction, maintenance and repair of the state highway system in Ohio. Pursuant to statute, such work is generally done pursuant to competitive bidding by private contractors.

In order to qualify to bid on ODOT projects, a contractor, prior to bidding, must qualify both financially and also as to the equal employment opportunity regulations. ODOT has issued rules and regulations regarding the requirements to qualify for bidding. The requirements include a financial statement, an experience questionnaire and submission of audited financial statements. ODOT also has a "short form" application for utilization of contracts up to $150,000 in amount. Funding for ODOT projects often involves both state and federal dollars. The Federal Highway Association (hereinafter "FHWA") imposes certain requirements upon the state, including employing minorities.

There are no federal regulations that require an absolute percentage of minority subcontractors. A part of the contract specifications for Project No. 207 included a proposal never before found in an ODOT project. The specifications for this project imposed an absolute requirement that two percent of the awarded value of such contracts be subcontracted to minority contractors qualified to bid with ODOT. The bid proposal issued for Project No. 207 was issued by ODOT in March 1977. The bid proposal required that prime contractors submit sealed bids on the project which were to be opened by ODOT on March 22, 1977. Plaintiffs obtained a temporary restraining order from the trial court preventing the opening of any bids. To date, the bids have not been opened.

If the bidder who received the contract did not meet the mandatory two-percent requirement, the contractor was subject to default termination for its failure to do so. No formal rulemaking procedures were followed by ODOT which authorized it to proceed with this mandatory two-percent requirement.

Contracts are awarded on the basis of competitive bidding to the lowest qualified bidder. R.C. 5525.01. Plaintiffs claim that the mandatory requirement relating to a fixed percentage of subcontracting to be given only to minority contractors adopted by ODOT is illegal based first, on the department's lack of statutory authority to issue such a re-

quirement; second, on the lack of a record to support the conclusion that such a requirement was necessary; and third, on the failure to comply with the rulemaking requirements of the Revised Code. The legality of these regulations is a question regarding the merits, which the trial court never reached.

The trial court issued findings of fact and conclusions of law wherein the court stated that the first and foremost question was the issue of standing of the plaintiffs to bring the action. The court ruled that the only plaintiffs who would possibly have had their interests infringed were those who submitted bids for Project No. 207. While the court specifically found that two of the plaintiffs were members of the Ohio Contractor's Association who purchased plans and bid upon the project, the court dismissed the complaint for lack of standing based upon the motion that none of the plaintiffs had submitted a bid on this project.

The defendants claim that declaratory and injunctive relief are barred by the doctrine of sovereign immunity. In *American Life & Acc. Ins. Co.* v. *Jones* (1949), 152 Ohio St. 287, at 288 [40 O.O. 326], the Supreme Court held in the fourth paragraph of the syllabus:

"An action against the administrator of a state bureau for a declaratory judgment pronouncing the rights, status or other legal relations of the plaintiff with reference to a statute is not an action against the state, even though other incidental relief is granted."

The court in *American Life* noted that if a citizen lacked standing in such a case, the citizen would be helpless no matter how unlawful, oppressive or outrageous the conduct of a state official might be. The court in this regard stated:

"As we have suggested, if the instant action were simply an action for the recovery of money there would be some plausibility in the argument that it was an action against the state and, therefore, not permitted, but assuredly an action

against a state employee to determine rights, liability or status is not prohibited because that employee happens to be the head of one of the administrative boards of the state. *If it were otherwise it would mean that one could not mandamus a state officer to perform a clearly mandatory duty or one could not enjoin him from committing a patent and outrageously illegal act. A private citizen in such case would be helpless from unlawful, oppressive and outrageous conduct of a state official.*" *Id.* at 299. (Emphasis added.)

This court has recognized the validity of *American Life* in *State, ex rel. Ferguson,* v. *Shoemaker* (1975), 45 Ohio App. 2d 83 [74 O.O.2d 109]. See, also, *Riviere, D.D.S., Inc.* v. *State* (1976), 49 Ohio App. 2d 38, 45 [3 O.O.3d 120], certiorari denied, 430 U.S. 916; and *Mechanical Contractors Assn.* v. *State* (1979), No. 79AP-405, unreported, affirmed (1980), 64 Ohio St. 2d 192 [18 O.O.3d 407]. We find that the doctrine of sovereign immunity has no applicability to this appeal.

The principal issue in this case is standing. It is necessary to individually analyze the entities involved in order to determine whether any have standing. With regard to the people who made bids, the findings by the trial court that none of the plaintiffs actually made a bid is contrary to the evidence. Clearly, the contractors who bid on the contract have standing to challenge the bidding requirements. In addition, we find that the subcontractors also have standing. The subcontractors in this case did submit price quotations to the general contractors. The ODOT requirement not only threatened the subcontractors with loss of a percentage of the construction dollar, but also the requirement allegedly removes them from competing for a percentage of the construction funds involved. Hence, we conclude that the subcontractors have standing to sue.

With regard to an association's standing to represent its members in a suit, the

Supreme Court has stated, in *Warth* v. *Seldin* (1975), 422 U.S. 490, 511, that:

"Even in the absence of injury to itself, an association may have standing solely as the representative of its members. * * * The association must allege that its members, or any one of them, are suffering immediate or threatened injury as a result of the challenged action of the sort that would make out a justiciable case had the members themselves brought suit. * * * So long as this can be established, and so long as the nature of the claim and of the relief sought does not make the individual participation of each injured party indispensable to proper resolution of the cause, the association may be an appropriate representative of its members, entitled to invoke the court's jurisdiction."

Later, the court, in *Hunt* v. *Washington Apple Advertising Comm.* (1977), 432 U.S. 333, 343, reviewed *Warth* and stated:

"Thus we have recognized that an association has standing to bring suit on behalf of its members when: (a) its members would otherwise have standing to sue in their own right; (b) the interests it seeks to protect are germane to the organization's purpose; and (c) neither the claim asserted nor the relief requested requires the participation of individual members in the lawsuit."

In this case, the members of the association are threatened with loss of bids through the exclusion from a percentage of the construction dollars for the project involved. The association seeks to protect its members from being deprived of an opportunity to fairly bid on such projects. Furthermore, there is no requirement that individual members participate in this suit. See *Mechanical Contractors Assn., supra.*

Finally, we must determine whether the taxpayers in this suit have standing to bring this action. When, as in this case, there is no statutory authorization, the taxpayer must satisfy the standard set forth as stated in the first paragraph of the syllabus in *State, ex rel. Masterson,* v. *Ohio Racing Commission* (1954), 162 Ohio St. 366 [55 O.O. 327], which provides:

"In the absence of statutory authority, a taxpayer lacks legal capacity to institute an action to enjoin the expenditure of public funds unless he has some special interest therein by reason of which his own property rights are placed in jeopardy."

The project in this case is funded by state and federal funds. The state funds are derived from the gasoline sales tax. However, merely paying gasoline taxes does not give these plaintiffs standing under *Masterson,* which requires that the taxpayers have a special interest in the public funds involved in the litigation which thereby prevents the litigation of abstract or personal legal propositions. As stated in 74 American Jurisprudence 2d 190, Taxpayers' Actions, Section 4:

"It has been stated that in the absence of such a showing of direct pecuniary injury by the taxpayer, no justiciable case or controversy would exist, and that the case would not be decided on the merits even if this point were waived in the court below. However, in some situations such damage or injury may be presumed, as in the sale of bonds for less than their par value, in the award of public contracts in violation of statutory requirements that such award must be made to the lowest bidder, in the execution of public contracts in which a public officer has a personal interest, in the execution of public contracts in violation of mandatory provisions of a statute respecting such contracts, or in the expenditure of funds for an unlawful or unconstitutional purpose."

In this case, each of the plaintiffs had the special interest in the bidding discussed, *supra,* and for this reason had the special interest required for maintaining a taxpayers' action under *Masterson.*

Plaintiffs' single assignment of error

is sustained, the judgment of the trial court is reversed, and the cause is remanded.

*Judgment reversed and cause remanded.*

WHITESIDE, P.J., and McCORMAC, J., concur.