THE STATE, EX REL. PAUL, APPELLANT AND CROSS-APPELLEE, *v.* OHIO STATE RACING COMMISSION ET AL., APPELLEES AND CROSS-APPELLANTS.

(No. 89AP-129—Decided October 31, 1989.)

*Allen & Payne* and *Craig A. Allen,* for appellant and cross-appellee William Paul.

*Anthony J. Celebrezze, Jr.,* attorney general, *Crabbe, Brown, Jones, Potts & Schmidt* and *John C. Albert,* special counsel, for appellee and cross-appellant Ohio State Racing Commission.

*Benesch, Friedlander, Coplan & Aronoff, N. Victor Goodman* and *James F. DeLeone,* for appellee and cross-appellant Thoroughbred Racing Clubs.

*Chester, Hoffman, Willcox & Saxbe, Roderick H. Willcox* and *John E. Breen,* for appellees and cross-appellants Scioto-Downs, Inc. and Mid-America Racing Association, Inc.

*Cavitch, Familo & Durkin Co., L.P.A.,* and *Michael C. Cohan,* for appellee and cross-appellant Northfield Park Associates.

*Anthony J. Celebrezze, Jr.,* attorney general, *Catherine M. Cola* and *Shawn H. Nau,* for appellees and cross-appellants Thomas E. Ferguson, Auditor of State, and Mary Ellen Withrow, Treasurer of State.

YOUNG, J. This matter is before the court upon the appeal of William Paul, appellant, from a judgment of the Franklin County Court of Common Pleas granting summary judgment in favor of appellees, Ohio State Racing Commission *et al.* The trial court also granted the motion of certain in-

dividual appellees for an assessment of costs and legal fees pursuant to Civ. R. 3(C)(2). Appellant, a retired school teacher, filed suit in the Lawrence County Court of Common Pleas challenging the validity of the tax abatement program set forth in R.C. 3769.08 and 3769.20. These code sections provide for an abatement of Ohio General Fund tax dollars levied by the state on racing permit holders from income derived from pari-mutuel betting. R.C. 3769.20 provides that the abatement can only be used for certain capital improvements made to the racing facilities by the permit holders.

Appellant's complaint sought to enjoin appellees, Ohio State Racing Commission, the Auditor of State, and the Treasurer of State, from proceeding to award certain tax abatements and to declare the tax abatement provisions of R.C. 3769.08 and 3769.20 unconstitutional. Thereafter, several more parties were added to the lawsuit through joinder and intervention. Motions to intervene as party-defendants were made by Northfield Park Associates ("Northfield"), a harness-racing permit holder conducting light harness racing in the Cleveland area, Scioto Downs, Inc., and Mid-America Racing Association, Inc., permit holders conducting light harness racing. Thistledown Racing Club, Inc., Randall Racing Club, Inc., Capital Racing Club, Inc., Buckeye Turf Club, Inc., River Downs Turf Club, Inc., and River Jockey Club, Inc., Summit Racing Club, Inc., Cranwood Racing Club, Inc., Toledo Maumee Raceway, Inc., Raceway Park, Inc., Lebanon Trotting Club, Inc., and Miami Valley Trotting Club, Inc., were joined pursuant to Civ. R. 19. Appellees then filed motions for a change of venue, pursuant to Civ. R. 3(B)(4), and for dismissal of the case. After several hearings on these issues, the trial court overruled these motions.

Thereafter, appellees filed petitions for writs of prohibition and mandamus in the Ohio Supreme Court seeking a change of venue. The Ohio Supreme Court granted appellees' writs and the case was transferred to the proper venue in the Franklin County Court of Common Pleas.

Appellees filed motions for summary judgment asserting that the appellant lacked standing to bring a taxpayer's action. Also, appellees individually filed motions for an assessment of costs and attorney fees pursuant to Civ. R. 3(C)(2). Appellees' motions for summary judgment, costs and attorney fees were granted, and thereafter, this appeal ensued. Appellant asserts the following three assignments of error:

"The trial court erred in holding that William Paul lacked standing to bring a taxpayer's action challenging the race track perit [sic] holder's abatement program.

"Franklin County Court of Common Pleas is not the appropriate court to determine an award for attoreny [sic] fees and costs under Ohio Civil Rule * * * 3(C)(2).

"The award of attorney fees and costs by the trial court was not only beyond their [sic] scope of authority, but was also an unreasonable award."

Appellees have filed a cross-appeal and assert the following three cross-assignments of error:

"I. The lower court erred in holding that there was a failure of proof as to whether the Ohio Attorney General's office and/or the Ohio State Racing Commission expended monies for attorney fees and costs.

"II. The lower court erred by not holding that Ohio Civil Rule 3(C)(2) on venue allows an award of attorney fees and costs to the Ohio Attorney General's office and the Ohio State Racing Commisison as a party just as it does for any other party to the action.

"III. The lower court erred in holding that there was a considerable duplication of effort and should have granted judgment for the entire amount of legal fees and costs incurred by the parties-defendants up to the time of transfer of venue."

In his first assignment of error, appellant asserts that the trial court's holding that appellant lacked "standing" was in error. The doctrine of "standing" is very intricate. See *Massachusetts* v. *Mellon* (1923), 262 U.S. 447; *Flast* v. *Cohen* (1968), 392 U.S. 83. The "standing" doctrine is designed to prevent the interference of government operation by someone who, without asserting legal injury, merely seeks to air his grievances regarding the conduct of government.

In Ohio, a taxpayer is accorded "standing" by statute. However, appellant does not base his challenge herein upon any statutory authority. Thus, in the absence of statutory authority, the taxpayer must satisfy the standard set forth as stated in the first paragraph of the syllabus in *State, ex rel. Masterson,* v. *Ohio State Racing Comm.* (1954), 162 Ohio St. 366, 55 O.O. 215, 123 N.E. 2d 1, which provides:

"In the absence of statutory authority, a taxpayer lacks legal capacity to institute an action to enjoin the expenditure of public funds unless he has some special interest therein by reason of which his own property rights are placed in jeopardy."

*Masterson* requires that the taxpayer demonstrate that he has a special interest in the public funds which are the subject matter of the litigation. See *C.E. Angles, Inc.* v. *Evans* (Dec. 14, 1982), Franklin App. No. 82AP-635, unreported; *State, ex rel. Connors,* v. *Ohio Dept. of Transp.* (1982), 8 Ohio App. 3d 44, 8 OBR 47, 455 N.E. 2d 1331; and *Mechanical Contractors Assn. of Cincinnati* v. *State*
(1980), 64 Ohio St. 2d 192, 18 O.O. 3d 407, 414 N.E. 2d 418. In a situation that does not involve a special fund and which only involves the state's general revenue fund, the taxpayer will meet the special interest requirement of *Masterson* by demonstrating that he, as a taxpayer, has contributed to the general fund. *State, ex rel. United McGill Corp.,* v. *Hamilton* (1983), 11 Ohio App. 3d 102, 11 OBR 155, 463 N.E. 2d 405.

In analyzing the facts at bar, this court must first determine the nature of the challenged tax abatement.

R.C. 3769.08 provides, in pertinent part:

"(B) At the close of each racing day, each permit holder authorized to conduct thoroughbred racing, *out of the amount retained on that day by the permit holder,* shall pay by check, draft, or money order to the tax commissioner, as a tax, a sum equal to the following percentages of the total of all moneys so wagered on that day:

"(1) One per cent of the first two hundred thousand dollars wagered, or any part thereof;

"(2) Two per cent of the next one hundred thousand dollars wagered, or any part thereof;

"(3) Three per cent of the next one hundred thousand dollars wagered, or any part thereof;

"(4) Four per cent of all sums over four hundred thousand dollars wagered.

"* * *

"From the moneys paid to the tax commissioner by thoroughbred racing permit holders, one-half of one per cent of the total of all moneys so wagered on a racing day shall be paid into the Ohio fairs fund created by section 3769.082 of the Revised Code, and a percentage of the total of all money wagered on a racing day shall be paid into the Ohio thoroughbred race fund created by section 3769.083 of the

Revised Code * * *. The tax commissioner shall pay the remaining percentage of all moneys wagered on a racing day into the general revenue fund. The remaining moneys may be retained by the permit holder, except as provided in this section with respect to the odd cents redistribution.

"* * *

"(C) At the close of each racing day each permit holder authorized to conduct harness or quarter horse racing, *out of the amount retained that day by the permit holder,* shall pay by check, draft, or money order, to the tax commissioner, as a tax, one-half of one per cent of all moneys wagered on that racing day to be paid into the Ohio fairs fund. In addition, harness racing permit holders shall pay to the tax commissioner, as a tax, five-eighths of one per cent of all moneys wagered on that racing day to be paid into the Ohio standardbred development fund, and quarter horse racing permit holders shall pay to the tax commissioner, as a tax, five-eighths of one per cent of all moneys wagered on that racing day to be paid into the Ohio quarter horse development fund created by section 3769.086 of the Revised Code. Out of the balance of the amount retained on that day as commission the harness or quarter horse track permit holder shall pay as a tax:

"(1) One per cent of the first two hundred thousand dollars wagered, or any part thereof;

"(2) Two per cent of the next one hundred thousand dollars wagered, or any part thereof;

"(3) Three per cent of the next one hundred thousand dollars wagered, or any part thereof;

"(4) Four per cent of all sums over four hundred thousand dollars wagered.

"Each permit holder authorized to conduct harness racing shall pay to the harness horsemen's purse pool a sum equal to fifty per cent of the pari-mutuel revenues retained by the permit holder as a commission after payment of the state tax. * * *

"* * *

"(G) To encourage the improvement of racing facilities for the benefit of the public, breeders, and horse owners, and to increase the revenue to the state from the increase in pari-mutuel wagering resulting from such improvements, the taxes paid by a permit holder to the state as provided for in this section, shall be reduced by three-fourths of one per cent of the total amount wagered for those permit holders who make capital improvements to existing race tracks or construct new race tracks. * * *" (Emphasis added.)

R.C. 3769.20 provides the following tax reduction to racetrack permit holders who undertake a major capital improvement project:

"(A) To encourage the renovation of existing racing facilities for the benefit of the public, breeders, and horse owners, and to increase the revenue to the state from the increase in pari-mutuel wagering resulting from such improvement, the taxes paid by a permit holder to the state, in excess of the amount to be paid into the Ohio fairs fund, the Ohio standardbred development fund, and the Ohio thoroughbred race fund where appropriate, as provided for in section 3769.08 of the Revised Code shall be reduced by one and one-half per cent of the total amount wagered for those permit holders who carry out a 'major capital improvement project,' as defined in this section. * * *"

A careful reading of R.C. 3769.08 and 3769.20 demonstrates that the tax abatement of which appellant complains is not *"per se"* an expenditure from the general fund. Rather, the method of accumulating and disseminating these funds is based upon a

statutory revenue scheme. The tax abatement set forth in R.C. 3769.08 and 3769.20 is in the nature of a tax exemption. Thus, the only persons who have "standing" would be those persons directly affected by the tax exemption. When considering the source of these funds, it is clear that the funds are derived from a tax paid by racing permit holders from the pari-mutuel betting wagers which are placed at the racetracks on a day-to-day basis. Consequently, the monies used for the tax abatement program and other earmarked funds, *e.g.*, the Ohio Fairs Fund, the Ohio Standardbred Development Fund *etc.*, are derived from a special source, the tax paid by racing permit holders based upon their daily receipts. Since the facts demonstrate conclusively that appellant has had only a remote association with Ohio's racing industry, has never been a racing permit holder, has never held a license issued by the Ohio State Racing Commission, and has never been a racehorse owner, the trial court properly found that, as a matter of law, appellant had no standing to bring this action.

In the alternative, appellant argues that he has placed wagers at racetracks in the state of Ohio, and thus, is afforded standing by virtue of the fact that he has contributed to this special fund. Placing a bet at an Ohio racetrack is conduct that is purely voluntary and, more often than not, done by a patron somewhat inconsistently. It is not obligatory upon a taxpayer to place bets and contribute to the fund; however, it is obligatory for a permit holder to pay the tax, based on his daily receipts, as set forth in R.C. 3769.08 and 3769.20. Besides its purely voluntary nature, when a person wagers a bet he places himself in the position of either losing, and thereby contributing to the fund, or winning, and thereby taking monies

from that fund. Even assuming that appellant was a contributor to this special fund through his wagering, appellant has failed to meet the *Masterson* criteria by demonstrating that he is suffering any personal or specific injury which could be attributed to the tax abatement programs of which he now complains.

The appellant asserts that the tax abatements are so large that they directly impact on his property rights. However, even assuming that appellant was to be considered as a contributor to the special fund, he has failed to demonstrate any personal or special legal injury. Since placing a wager is a voluntary, optional act, appellant can alleviate any injury that he may be suffering by simply curtailing his wagering activities. Furthermore, appellant has failed to show a concrete personal stake in the outcome of his challenge by the very fact that any contribution he makes to the special fund through wagering is voluntary. See *Racing Guild of Ohio, Local 304* v. *Ohio State Racing Comm.* (1986), 28 Ohio St. 3d 317, 321, 28 OBR 386, 389, 503 N.E. 2d 1025, 1029, citing *Baker* v. *Carr* (1962), 369 U.S. 186, 204. It is a tenuous position asserted by appellant that he is somehow suffering a legal injury through his own voluntary conduct which conduct may be profitable to appellant.

Upon further analysis, any money which appellant pays into the general fund as a taxpayer is not being diverted to the capital improvement program for the racetracks. Rather, the funds are specifically directed through a tax abatement provision from funds derived from pari-mutuel betting. The only effect upon appellant as a taxpayer would be that any benefits he personally receives from the general revenue fund may be reduced by a very remote minimal amount. This amount would not be so

injurious to appellant as to afford him standing to challenge the tax abatement program set forth in R.C. 3769.08 and 3769.20.

Even assuming *arguendo* that the racetrack tax abatement program constituted a diversion of tax dollars from the general fund, the appellant herein has not demonstrated that this program fails to accomplish the stated goal of benefiting the public. See R.C. 3769.20(A). The goal is to renovate and upgrade the existing facilities in order to attract more people, and in turn, generate more money through pari-mutuel betting. If more money is being generated by the pari-mutuel betting, then more money is finding its way to the general fund for the benefit of the public. Accordingly, appellant's first assignment of error is not well-taken and is overruled.

In his second assignment of error, appellant asserts that the Franklin County Court of Common Pleas was not the appropriate court to determine an award of attorney fees and costs under Civ. R. 3(C)(2). It is appellant's contention that only the Lawrence County court could properly award attorney fees and costs pursuant to Civ. R. 3(C)(2). Civ. R. 3(C)(2) provides:

"When an action is transferred to a county which is proper, the court may assess costs, including reasonable attorney fees, to the time of transfer against the party who commenced the action in a county other than stated to be proper in subdivision (B) of this rule."

Appellees filed motions for · a change of venue, and several appellees, in conjunction with the change of venue motions, requested attorney fees and costs. Since the Auditor of State and the Treasurer of State were named as original party-defendants, the Lawrence County trial court was compelled, pursuant to Civ. R. 3(B)(4), to grant appellees' change of venue motion. However, the Lawrence County trial court overruled appellees' motions for change of venue and fully intended to proceed with the case. Appellees immediately filed writs of prohibition and mandamus which were granted by the Ohio Supreme Court in *State, ex rel. Ohio State Racing Comm.,* v. *Walton* (1988), 37 Ohio St. 3d 246, 525 N.E. 2d 756. The Supreme Court's disposition in the *Walton* case was as follows:

"* * * We * * * allow a peremptory writ of prohibition prohibiting respondent [the trial judge] from conducting further proceedings in the *Paul* case and a peremptory writ of mandamus ordering respondent to transfer the case to the Court of Common Pleas of Franklin County." *Id.* at 247, 525 N.E. 2d at 757.

Although there were pending issues before the Lawrence County trial court regarding requests for attorney fees and costs under Civ. R. 3(C)(2), the Supreme Court made it clear in the disposition of the *Walton* case that the Lawrence County trial judge was prohibited from conducting *any* further proceedings in the matter herein and ordered the trial judge to transfer the case to the Franklin County Court of Common Pleas. In its disposition of the matter, the Supreme Court used the word "peremptory" which cogently mandates that its orders be followed expeditiously. The Supreme Court noted, in *Walton, supra,* at 247, 525 N.E. 2d at 758, that Civ. R. 3(B) and (C)(1) also establish that, for purposes of prohibition, respondent's retention of the case was "unauthorized by law" since appellees had a clear legal right to have the case transferred pursuant to Civ. R. 3(C)(1) and the trial judge had a clear legal duty to transfer the case to Franklin County. Thus, the Franklin County trial court was the proper court under the facts of this case to award attorney fees and costs

requested by certain appellees for the expenses which they incurred as a result of their having filed motions for change of venue. Accordingly, the Franklin County Court of Common Pleas was the appropriate court to determine an award of attorney fees and costs in the matter herein. Consequently, appellant's second assignment of error is overruled.

In the third assignment of error, appellant asserts that the award of attorney fees and costs by the trial court was not only beyond its scope of authority, but was also unreasonable. In light of this court's disposition of appellant's second assignment of error, Franklin County Court of Common Pleas was the proper court to award attorney fees and costs under the facts of this case. Thus, the Franklin County trial court was well within its scope of authority. The only remaining issue is the reasonableness of the award. The Franklin County trial court made the following disposition regarding attorney fees and costs:

"All defendants have filed motions for an assessment of costs and attorney fees as provided in [Civil] Rule 3(C)(2). In response to these motions, the court held an evidentiary hearing at which attorneys for the various defendants testified as to the work performed, the lawyer personnel involved, the hours expended, and the various hourly rates. The testimony of the various witnesses was similar in nature, and each explained the detailed time sheets attached to the motions and memoranda and supported by affidavit. All witnesses testified that the attorneys' time involved for which recompense was sought was strictly limited to work performed on the motions relating to venue and that involved in prosecuting the Supreme Court proceedings. No claim for fees involved any work not related to the issue of venue. * * *

"* * *

"The defendants also offered the testimony of Mr. Keith McNamara, of the Columbus Bar, as an expert witness to opine whether the hourly rates of the attorneys involved were reasonable and proper for the type of service rendered, whether such hourly rates were within the range of those customarily and usually charged in the community, and whether the hours expended were reasonable, having in mind the nature and complexity of the work performed.

"Mr. McNamara answered all of the above in the affirmative, based on community standards and the standards set out by the American Bar Association.

"The plaintiff offered no testimony on any of the [Civil] Rule 3(C)(2) issues, merely cross-examining.

"After a thorough review of the evidence, the court finds that the hourly rates and time expended for work performed are reasonable and comport with community standards and the standards of the American Bar Association. The court finds, however, that with respect to the work performed by the parties-defendant on the venue issue, there was considerable duplication of effort. Accordingly, the court finds the motion for costs and reasonable attorneys fees, in part, well taken and assesses the fees as follows:

"Northfield Park
Associates ...............$5,245.00
    "Scioto Downs, Inc. .....  5,265.00
    "Mid-America Racing
Association ..............  5,265.00
    "Thistledown Racing
Club, Inc. ................  1,165.00
    "Summit Racing Club,
Inc....................  1,165.00
    "Cranwood Racing Club,
Inc....................  1,165.00
    "Capital Racing Club,
Inc......................  1,165.00

"Randall Racing Club, Inc. . . . . . . . . . . . . . . . . . . . . . 1,165.00
"Buckeye Turf Club, Inc. . . . . . . . . . . . . . . . . . . . . . 1,165.00
"River Downs Turf Club, Inc. . . . . . . . . . . . . . . . 1,165.00
"River Downs Jockey Club, Inc. . . . . . . . . . . . . . . . 1,165.00

"With respect to the Ohio State Racing Commission's motion, the court finds that there is a failure of proof as to whether the Ohio State Racing Commission did, in fact, expend, or obligate itself to expend, any monies for attorneys fees and costs. The court notes that the Attorney General of Ohio is statutory counsel for all state agencies, and indeed, in this case, counsel for the [Ohio State] Racing Commission is styled, 'Special Counsel to the Attorney General.' The record does not demonstrate exactly which entity is in fact obligated for the cost of defense. Moreover, the court is not persuaded that [Civil] Rule 3(C)(2) contemplates an assessment of costs to the state of Ohio in an action of *this nature*. However, because of the state of the record, the Court is not required, and makes no finding, on this issue.

"Accordingly, it is therefore ORDEDRED [*sic*], ADJUDGED and DECREED that JUDGMENTS are rendered against the plaintiff and in favor of the defendants as follows:
"Northfield Park Associates . . . . . . . . . . . . . . . $5,245.00
"Scioto Downs, Inc. . . . . . 5,265.00
"Mid-America Racing Association . . . . . . . . . . . . . 5,265.00
"Thistledown Racing Club, Inc. . . . . . . . . . . . . . . . 1,165.00
"Randall Racing Club, Inc. . . . . . . . . . . . . . . . . . . . . . 1,165.00
"Capital Racing Club, Inc. . . . . . . . . . . . . . . . . . . . . . 1,165.00
"Buckeye Turf Club, Inc. . . . . . . . . . . . . . . . . . . . . . 1,165.00
"River Downs Turf Club, Inc. . . . . . . . . . . . . . . . 1,165.00

"River Downs Jockey Club, Inc. . . . . . . . . . . . . . 1,165.00[.]"
(Emphasis *sic*.)

In an addendum to its order and judgment, the trial court added:

"The court inadvertently omitted, at the bottom of page 5 of its Order and Judgment filed January 11, 1989, the following, to wit:
"Summit Racing Club, Inc. . . . . . . . . . . . . . . . . . . . . . $1,165.00
"Cranwood Racing Club, Inc. . . . . . . . . . . . . . . . . . 1,165.00[.]"

In its September 22, 1987 order, the Lawrence County trial court made a disposition regarding all outstanding motions for intervention and joinder and stated, in pertinent part:

"* * * that the Ohio State Racing Commission's motion to join the Ohio Tax Commissioner and all other entities involved in the tax abatement program is well-taken and the Ohio Tax Commissioner and the following racing permit holders are hereby joined as party defendants, to wit: Capital Racing Club, Inc., Buckeye Turf Club, Inc., Summit Racing Club, Inc., Cranwood Racing Club, Inc., Randall Racing Club, Inc., Thistledown Racing Club, Inc., River Downs Turf Club, Inc., River Downs Jockey Club, Inc., Toledo Maumee Raceways, Inc., Raceway Park, Inc., Lebanon Trotting Club, Inc., and Miami Valley Trotting Club, Inc."

The Lawrence County trial court considered the foregoing permit holders as indispensable parties joined in the action herein pursuant to Civ. R. 19. Furthermore, the September 22, 1987 order also granted the motions to intervene filed by Scioto Downs, Inc., Mid-America Racing Association, Inc., and Northfield Park Associates. The Staff Note to Civ. R. 3(C)(2) states that the award of attorney fees is necessary "to place a curb upon the party who deliberately or heedlessly files an action in a county where venue is not

proper thereby causing these additional expenses. * * *"

In applying Civ. R. 3(C)(2) to the facts of this case, an award of attorney fees would be proper as to the additional expenses incurred by the original defendants only. The intervenors, Scioto Downs, Inc., Mid-America Racing Association, Inc. and Northfield Park Associates, although they may have had a formidable interest in the merits of this case, had no interest at stake, whatsoever, in the determination of venue. Their interest was in the fund, not in venue. Thus, since they voluntarily chose to intervene in this action before the issue of venue was resolved, they are not entitled to an award of attorney fees and costs pursuant to Civ. R. 3(C)(2). Likewise, the parties joined through the motion filed by the Ohio Racing Commission as indispensable parties pursuant to Civ. R. 19 are not entitled to an award of attorney fees pursuant to Civ. R. 3(C)(2) since the appellant was not directly responsible for their joinder in the lawsuit. The parties joined in the lawsuit pursuant to the Ohio Racing Commission's Civ. R. 19 motion and were brought into the lawsuit at the Ohio Racing Commission's request and not as any result of a direct action by the appellant. Accordingly, appellant's third assignment of error is overruled in part and sustained in part.

In the first and second cross-assignments of error, the appellees assert that the Franklin County trial court erred when it determined that there was a failure of proof as to whether the Ohio Attorney General and the Ohio State Racing Commission were entitled to attorney fees and costs, and erred in holding that Civ. R. 3(C)(2) was not applicable to these appellees. The state and its entities upon proper proof, and like any private party, are entitled to recover attorney fees and costs pursuant to Civ. R. 3(C)(2).

In the case at bar, the trial court on its own explained that: (1) it was unclear as to whether the Attorney General's office or the Ohio State Racing Commission were defending the commission's interest; (2) there was a failure of proof; and (3) the trial court was under the impression that the state could not recover attorney fees and costs in an action of "this nature." However, upon review of the record, the testimony of attorney John Alberts serves as a substantial basis upon which to award attorney fees to the Ohio State Racing Commission pursuant to Civ. R. 3(C)(2). The trial court improperly held that there was a failure of proof regarding the expenses incurred by the Ohio State Racing Commission in defending this action. Thus, this matter must be remanded to the trial court to properly determine the amount of attorney fees that should be awarded to the original party-defendant, the Ohio State Racing Commission. Therefore, appellee Ohio State Racing Commission's first and second cross-assignments of error are well-taken and are sustained.

Appellees' third cross-assignment of error asserts that the trial court erred in holding that there was a considerable duplication of effort and that the trial court should have granted the entire amount of legal fees requested. In light of this court's disposition of appellant's third assignment of error, the trial court, on remand, can reconsider the duplication of effort among the appellees given the fact that the trial court will now need only reconsider the request for attorney fees and costs of the original party-defendant, the Ohio State Racing Commission. Appellee Ohio State Racing Commission's third cross-assignment of error is well-taken and is sustained.

Accordingly, appellant's first and second assignments of error are not well-taken and are overruled. Appellant's third assignment of error is

overruled in part and sustained in part. Appellees' first, second and third cross-assignments of error are sustained. The judgment of the Franklin County Court of Common Pleas is affirmed in part, reversed in part, and the cause is remanded for further proceedings in accordance with law and this opinion.

*Judgment affirmed in part,*
*reversed in part,*
*and cause remanded*
*with instructions.*

STRAUSBAUGH and BOWMAN, JJ., concur.