**VERMILION TEACHERS' ASSOCIATION et al., Appellants,**

**v.**

**VERMILION LOCAL SCHOOL DISTRICT BOARD OF EDUCATION et al., Appellees.**

[Cite as *Vermilion Teachers' Assn. v. Vermilion Local School Dist. Bd. of Edn.* (1994), 98 Ohio App.3d 524.]

Court of Appeals of Ohio,
Erie County.

No. E–93–49.

Decided Nov. 4, 1994.

Ted Iorio and Brenda G. Meyer, for appellants.

*Richard T. Prasse,* for appellee Vermilion Local School District Board of Education.

*Anthony Giardini,* for appellee Frank Workman.

———————

HANDWORK, Judge.

This is an appeal from a judgment of the Erie County Court of Common Pleas which denied appellants' motion for summary judgment and granted appellees' cross-motion for summary judgment.

The facts relevant to this appeal are as follows. In the 1990–1991 school year, David Frank Workman ("Workman") was a tenth grade student in appellant Bryan's ("Bryan") high school biology course at Vermilion High for both semesters. Workman received a passing grade for the fall semester but received an F for spring semester in biology. Workman's failure and his subsequent treatment by appellee Vermilion Local School District Board of Education ("the board") gave rise to litigation and ultimately this appeal.

Bryan's biology course requirements and grading procedures were clearly delineated in a document that was disseminated to the students at the beginning of each semester. The document was reviewed orally with the students at the beginning of each semester. The document stated that an incomplete notebook would result in course failure for the nine-week grading period and course failure for the entire semester. A complete class notebook consisted of several separately graded assignments within different categories of work, such as (1) the student's notes from class sessions, (2) outlines of chapters from the textbook, and (3) written laboratory reports. The spring course requirements also included submission of two major laboratory projects, a plant lab study and a behavior lab study.

Spring semester consisted of two nine-week grading periods. At the end of the first nine-week grading period of spring semester, Bryan required the biology students to submit their class notebooks. When Bryan returned the notebooks, he included a checklist of the items in the notebook with comments where improvement was needed. During the second nine-week grading period of the spring semester, Bryan met individually with each biology student to go over the student's progress. The student was required to bring the class notebook to this one-on-one session. When he met with Workman, Workman did not have his class notebook.

At semester's end, Workman did not submit the two major laboratory projects and submitted an incomplete class notebook. Although Workman had a passing

grade on quizzes and exams, because of the omission of the other course requirements, Bryan gave Workman an F for the grading period as well as the semester utilizing the "override procedure." Bryan also used the override procedure with two other biology students that spring semester.

Vermilion High School has a grading policy that was developed by a committee of teachers and evaluated and modified by the high school administration. The high school principal testified that she sent this grading policy to the board during the summertime. The board had neither modified nor raised objection to the grading policy. One part of this grading policy was the override procedure, a means of "overriding" the computer averaging of grades from two nine-week grading periods. Another part of Vermilion High grading policy states: "No student can be failed for failing to complete a single item such as a project, assignment, book report, etc., unless: * * * 3. A completed Failure to Complete Requirements Report will be sent to the parents. * * * " Thus, when a student fails to complete more than one single assignment, he can be failed without parental notification pursuant to the grading policy. This failure could result from a teacher's use of the override procedure.

Sometime in June 1991, Bryan met with Workman's mother to discuss her son's biology grade. Both of Workman's parents met with the superintendent of Vermilion schools in late June or early July to discuss their son's grade and the override procedure. After this meeting, the parents also went to a board meeting and, during the public session, Mr. Workman expressed the parents' concern over their son's grade and the override procedure. The board directed the superintendent to investigate the issue. The superintendent met with Bryan and the high school principal and Bryan explained the course requirements and grading procedure. The superintendent had a series of conversations primarily with the principal, but also with Bryan and with Workman's parents to find a way to resolve this issue.

In September, the superintendent, Workman, his parents, the high school principal and Bryan had a meeting to discuss the grade issue and a possible resolution. A proposal was made for Workman to retake spring semester biology with Bryan and to replace the grade. Normally, when a student retakes a failed course, both the failure and the second grade appear on the transcript but in Workman's case the grade would have been replaced. While the parents were considering the proposal, Bryan said something that apparently enraged them and the meeting dissolved without resolution. Shortly after this meeting, Workman's father told the superintendent that he wanted to talk with an attorney.

The superintendent received a letter from an attorney representing Workman's parents requesting a meeting. The superintendent and the principal met with the Workman's attorney and discussed the proposal for Workman to retake biology. According to the superintendent, he tried to leave the impression that there were not a lot of other options. The board was kept aware of the attempts to resolve the issue of Workman's grade because the superintendent submits written communications to the board called "Friday reports."

On October 7, 1991, there was a regular meeting of the board. Workman's parents were at this meeting and spoke to the superintendent, asking to speak privately to the board about their son's spring semester biology grade. The superintendent told the presiding board officer about this request. After the board conducted its regular session business, a motion was made to move into executive session to discuss personnel compensation. Workman's parents were invited into this executive session to discuss the issue of their son's grade. No motion had been made to move into executive session to discuss this specific issue.

After Workman's parents explained their complaint to the board, proposals were made and then rejected by various board members. A proposal was made that Workman do an alternative assignment to allow the grade to be changed. It evolved that Workman would do three separate assignments, designed and graded by a certified science teacher outside the school district. If completed satisfactorily, the grades of these three assignments would be averaged into the grade for the second nine-week grading period; Workman's semester grade would be adjusted accordingly with the override taken off. No vote was taken by the board on this proposal nor was any rule, regulation or any formal action adopted when the board went back into regular session.

Later in October, Workman was assigned to write three science reports, not on biology topics but on environmental science topics. These topics were designed, and the papers later graded, by a county supervisor. Workman successfully completed the assignments by January 1992. Although not initially changed because of the litigation, ultimately, Workman's grade in biology was changed to a "pass."

Soon after Bryan learned of the board's October 7, 1991 actions, he, and the high school principal who supported his use of the override, met with the board in an effort to explain his biology class assignments, his grading procedure, and the use of the override. The board did not alter the action initiated on October 7, 1991.

A complaint was originally filed by Bryan and appellant Vermilion Teachers' Association, OEA/NEA ("the association"), on March 30, 1992, suing the board. Appellants sought a declaratory judgment that the board had violated the Sunshine Law and various provisions of R.C. Title 33, including the graded-course-of-study provision. Appellants also sought a preliminary and permanent injunction against changing Workman's grade and monetary damages as well as the civil forfeiture of $100 and court costs and attorney fees pursuant to R.C. 121.22(I)(2).

A notice of voluntary dismissal was filed on August 19, 1992 because of a scheduling conflict. The case was refiled on September 9, 1992. Appellee Frank Workman, father of student Workman, filed a motion to intervene as guardian and next friend and the motion was granted. Bryan and the association filed a motion for summary judgment on February 18, 1993. Oppositions to this motion were filed by both appellees. The board also filed a cross-motion for summary judgment. Appellants filed a memorandum in opposition to this cross-motion. On June 23, 1993, a judgment entry granted the board's cross-motion for summary judgment and denied appellants' motion for summary judgment. Appellants filed a notice of appeal on July 23, 1993.

Appellants set forth two assignments of error:

"Assignment of Error No. 1:

"The Trial Court erred in granting the Appellees' Motion for Summary Judgment and denying the Appellants' Motion for Summary Judgment and denying the Appellants' Motion for Summary Judgment with regard to the Appellants' assertion that the Appellee Vermilion School District violated its own graded course of study procedure as mandated by O.R.C. § 3313.60, § 3313.20, the Board's own policies and procedures, and the high school faculty handbook.

"Assignment of Error No. 2:

"The Trial Court erred in granting the Appellees' Motion for Summary Judgment and denying the Appellants' Motion for Summary Judgment with regard to the Appellants' claim that the decision to permit Student Frank Workman to take alternative assignments in lieu of the high school biology course taught by Appellant Bryan, and upon successful completion of said assignments, to allow Student Workman's grade to be changed retroactively for Appellant Bryan's high school biology course, violated the Ohio Public Meetings Law, O.R.C. § 121.22."

Central to both assignments of error is the issue of standing to sue. As noted in *State ex rel. Consumers League of Ohio v. Ratchford* (1982), 8 Ohio App.3d 420, 424, 8 OBR 544, 548, 457 N.E.2d 878, 883:

"Standing requires demonstration of a concrete injury in fact, rather than an abstract or suspected injury. Demonstration of injury in fact is limited to those situations where an individual can show he has suffered or will suffer a specific injury, even if slight, from the challenged action or inaction, and that this injury is likely to be redressed if the court invalidates the action or inaction."

If Bryan has standing to sue in his own right, then the association would have standing because he is one of its members. *State ex rel. Connors v. Ohio Dept. of Transp.* (1982), 8 Ohio App.3d 44, 8 OBR 47, 455 N.E.2d 1331.

■ In regard to the first assignment of error, neither Bryan nor the association has standing to sue. Bryan has not demonstrated that he has suffered any concrete injury in fact as a result of the board's action. Thus, because he is unable to demonstrate this essential element, Bryan does not have standing. Because Bryan does not have standing, the association does not have standing.

Accordingly, appellants' first assignment of error is found not well taken to the extent that appellants lack standing.

The second assignment of error concerns the requirements of R.C. 121.22, the "Sunshine Law."[1] This section requires that public officials take official action and conduct deliberations upon official business only in open meetings. Thus, all meetings of any public body shall be public meetings open to the public, unless

---

1. In both assignments of error, appellants seek to have this court address the merits of the actions taken by the board in its executive session on October 7, 1991. This court is reluctant to enter into the management of schools, even though we find some of the board's actions violative if not of the letter than at least the spirit of the legal constraints placed upon it.

   For example, a board of education may not exceed its statutorily granted jurisdiction or authority. *Verberg v. Cleveland City School Dist. Bd. of Edn.* (1939), 135 Ohio St. 246, 14 O.O. 87, 20 N.E.2d 368, paragraph one of syllabus. Therefore, a board may not undertake or *authorize* any action that is inconsistent with statutory law. Baker's Ohio School Law (1994) 28, Section 3.01. Here, the board implicitly, if not explicitly, authorized the superintendent to provide an alternative assignment for one student, Workman, without regard for any other students similarly situated. Boards are required to have regulations that apply equally to all within the class regulated. *Jacobs v. Benedict* (1973), 39 Ohio App.2d 141, 68 O.O.2d 343, 316 N.E.2d 898.

   Another constraint on the board is R.C. 3313.60, the provision for graded courses of study, which include biology. Graded courses of study must follow specific goals and objectives that must be approved by the board. It is apparent that the alternative assignments given to Workman were papers on topics in environmental science, not biology, even though the grades on the assignments were to be used to recalculate his grade in biology. Thus, the superintendent, the executive officer of the board, deviated from the board-approved graded course of study for one student.

   This court is not unaware of the constraints placed upon elected officials by demanding constituents. However, the board must remember the ultimate demands placed upon it by the law of Ohio, and conduct itself accordingly.

the subject matter is excepted by law. A board of education is a public body. R.C. 121.22(B)(1).

R.C. 121.22(G) provides the procedural requirements in regard to holding nonpublic, executive sessions: a roll call vote and a motion, approved by a majority, to go into executive session stating which one or more of the six exempted subjects, delineated in R.C. 121.22(G)(1) to (G)(6), is to be discussed. This section requires the board to conduct its meetings and discuss issues openly, except for the exempted subjects. Furthermore, even if an exempted subject were discussed in executive session, the sunshine law requires that the board move to go into executive session by stating which "one or more" of the subjects are to be discussed, R.C. 121.22(G), and then to adopt in an open session any rule, regulation, or formal action decided upon in executive session. R.C. 121.22(H).

R.C. 121.22(I)(1) grants standing to any person to bring an action to enforce the provisions of the section. Thus, if this court finds a violation of the provisions of the Sunshine Law, Bryan, and therefore the association, would have standing to sue.

In the case *sub judice*, a motion was made to move into executive session to discuss personnel compensation, one of the six exempted subjects delineated in R.C. 121.22(G). Once in executive session, after discussing this subject, the board proceeded to discuss Workman's course failure due to the school's override procedure, without a motion having been made to move into executive session to discuss this subject. Thus, the board violated the requirements of R.C. 121.22(G). Appellees in their brief to this court state: "The Board has admitted in its Answer that its procedure [going into executive session to discuss a student's grade without so specifically stating] did not follow the Sunshine Law."

Appellees contend that because the board is required to keep a student's grade confidential, R.C. 121.22(G)(5), the exempted subject covering "matters required to be kept confidential by federal law or rules or state statutes," would apply. Therefore, appellees argue, Workman's failing grade due to the use of the override procedure could only have been discussed in executive session. This argument misses the point. When the board plans to discuss *any* exempted subject, a motion to move into executive session "shall state which one or *more* of the approved matters listed * * * are to be considered at the executive session." (Emphasis added.) R.C. 121.22(G).

R.C. 121.22(A) states "this section shall be liberally construed." Public bodies cannot broaden the scope of the six exempted subjects, even if it would be more convenient to discuss a subject in executive session. *Gannett Satellite Information Network, Inc. v. Chillicothe Bd. of Edn.* (1988), 41 Ohio App.3d 218, 221, 534 N.E.2d 1239, 1241–1242.

■ Once a violation of the Sunshine Law is found, the remedy provisions of R.C. 121.22(I) are mandatory:

"Upon proof of a violation * * *, the court of common pleas shall issue an injunction * * *." *Fayette Volunteer Fire Dept. No. 2, Inc. v. Fayette Twp. Bd. of Twp. Trustees* (1993), 87 Ohio App.3d 51, 621 N.E.2d 855.

Even a "technical violation" of the Sunshine Law requires application of R.C. 121.22(I). *Beisel v. Monroe Cty. Bd. of Edn.* (Aug. 29, 1990), Monroe App. No. CA–678, unreported, 1990 WL 125485. A trial court is bound by the remedy provisions even if the employee terminated by resolution in executive session, contrary to R.C. 121.22(G) requirements, has been returned to her job by the State Personnel Board of Review. *Drake v. Fairfield Cty. Dist. Bd. of Health* (Jan. 22, 1991), Fairfield App. No. 28–CA–90, unreported, 1991 WL 6267. As noted by the *Drake* court, the Sunshine Law contemplates the issuance of an injunction as a preventative measure. *Id.*

■ Therefore, because this court finds a violation of the Sunshine Law, Bryan and thus the association have standing to bring this action to enforce the provisions of R.C. 121.22.

Accordingly, appellants' second assignment of error is found well taken to the extent that the board violated R.C. 121.22 when it went into executive session on October 7, 1991, without moving to do so for the additional reason of discussing . the issue of a student's course failure.

On consideration whereof, the judgment of the Erie County Court of Common Pleas is affirmed in part and reversed in part. This cause is remanded to the trial court with instructions to issue an injunction pursuant to R.C. 121.22 to the board to prevent future violations and to order the board to pay a civil forfeiture of $100 for the past violation of R.C. 121.22 and for a hearing regarding an award of appellants' trial court costs and reasonable attorney fees incurred in enforcing the provisions of R.C. 121.22. Appellants and appellees are ordered to pay their own court costs of this appeal.

*Judgment affirmed in part,*
*reversed in part*
*and cause remanded.*

GLASSER and SHERCK, JJ., concur.