**OHIO VALLEY MALL COMPANY, Appellant,**

**v.**

**WRAY, Dir., et al., Appellees.**

[Cite as *Ohio Valley Mall Co. v. Wray* (1995), 104 Ohio App.3d 629.]

Court of Appeals of Ohio,
Tenth District, Franklin County.

No. 94APE10–1509.

Decided June 15, 1995.

**630**

*Calfee, Halter & Griswold, Mark I. Wallach, Anthony J. LaCerva, John A. Heer II* and *Stanley J. Dobrowski,* for appellant.

*Betty D. Montgomery,* Attorney General, *Frederick C. Schoch* and *Karen A. Cincione,* Assistant Attorneys General, for appellee Jerry Wray.

*Vorys, Sater, Seymour & Pease, J. Scott Jamieson* and *Brent C. Taggart,* for appellees THF Realty, Inc., THF Development Company and THF St. Clairsville, Inc.

---

PETREE, Judge.

This is an appeal by plaintiff, Ohio Valley Mall Company, from a judgment of the Franklin County Court of Common Pleas, denying plaintiff's request for

declaratory and injunctive relief and dismissing its complaint. On appeal, plaintiff presents three assignments of error:

"I.    The trial court erred as a matter of law in finding that Ohio Valley Mall Company lacked standing to bring its claims as a taxpayer and as a 'person' under the open meetings law.

"II.    The trial court erred as a matter of law in failing to find that appellee Jerry Wray violated Ohio Revised Code sections 5525.10 and 5525.15 by awarding and executing a contract which exceeded the engineer's estimate by more than five percent.

"III.    The trial court erred as a matter of law in failing to find that the Awards Committee of the Ohio Department of Transportation violated Ohio Revised Code Section 121.22 by meeting and deliberating in private and without notice on awards of public contracts."

Plaintiff is a taxpayer who commenced this action against defendant, Jerry Wray, Director of the Ohio Department of Transportation ("ODOT"), alleging a violation of the statutory requirements for contract bidding procedures with respect to a contract awarded to Tri–State Asphalt Company for a highway improvement project located in Belmont County, Ohio. Specifically, plaintiff contends that defendant violated R.C. 5525.10 and 5525.15 by accepting Tri–State's bid and awarding it a contract, as the bid exceeded defendant's official cost estimate by more than five percent. Plaintiff further contends that defendant, through ODOT's Contract Award Advisory Committee ("Awards Committee"), violated R.C. 121.22, Ohio's so-called "Sunshine Law," by failing to comply with public meeting requirements in the competitive bidding process.

The essential facts in this action are not in dispute and were submitted to the trial court by stipulation of the parties. In 1992, defendant approved plans for a highway construction project in Belmont County, Ohio. The project, funded through the Federal Highway Administration Trust Fund, derived funds from the federal tax on gasoline. Defendant first sought competitive bids for the project in June 1994. At that time, defendant estimated the reasonable cost of the project to be $430,000. Tri–State, the sole bidder for the project, submitted a bid of $562,094.66. Defendant, by and through ODOT's Awards Committee, rejected the bid because it exceeded the cost estimate by more than thirty percent.

Thereafter, defendant revised its prior cost estimate to $475,000. In August 1994, defendant again sought bids for the project. Once again, Tri–State was the sole bidder, this time submitting a bid of $546,931.74, which exceeded the revised cost estimate by more than fifteen percent. Upon recommendation of the Awards Committee, defendant accepted the bid and awarded the contract to Tri–State.

On September 9, 1994, plaintiff, as a taxpayer of the state of Ohio, filed a complaint seeking a declaration that defendant's acceptance of Tri–State's bid and award of the contract violated the statutory requirements regarding contract bidding procedures set forth in R.C. 5525.10. Plaintiff also sought a preliminary and permanent injunction restraining defendant from executing the contract. In addition to the complaint for declaratory and injunctive relief, plaintiff also filed a motion for an order temporarily restraining defendant from accepting Tri–State's performance of the contract.

On September 22, 1994, plaintiff amended its complaint to add claims that the meetings in which the Awards Committee considered and advised the acceptance of Tri–State's bid violated R.C. 121.22. Plaintiff further sought declaratory and injunctive relief to invalidate and enjoin the contract between defendant and Tri–State.

On September 27, 1994, defendant filed a motion to dismiss pursuant to Civ.R. 12(B)(6) and (7). On the same day, a hearing was held before the trial court. By agreement of the parties, the court heard arguments both on the motion for preliminary injunction and the merits of the action.

By decision and entry dated October 13, 1994, the trial court overruled plaintiff's motion for a temporary restraining order and its request for preliminary and permanent injunctive relief. The court further ordered the dismissal of plaintiff's complaint, concluding that plaintiff lacked standing to bring the action.

On October 18, 1994, plaintiff appealed the trial court's judgment. Plaintiff's motion for an injunction pending appeal, filed with this court on November 14, 1994, was denied.

By the first assignment of error, plaintiff contends that the trial court erred in finding that plaintiff lacked standing to assert its claims as a taxpayer and as a "person" under the open meetings law. Preliminarily, we note that the body of the trial court's opinion refers only to plaintiff's standing as a taxpayer to challenge the contract and does not specifically speak to plaintiff's standing to bring the open meetings action. However, the entry dismissing plaintiff's complaint states only that "this Court concludes that the Plaintiff does not have standing to bring this action"; thus, the opinion is not entirely clear as to what standing issue the trial court refers. For instance, the court could have concluded, as plaintiff contends, that the plaintiff had no standing to assert its claims either as a taxpayer challenging the contract or as a "person" under the open meetings law. Under either ground the trial court might have granted the dismissal. Since we are unsure of the basis for the trial court's judgment, our analysis will include determinations of both standing issues.

We first address plaintiff's argument regarding its status as a taxpayer to enjoin the performance of the contract executed between defendant and Tri–State for defendant's alleged violation of R.C. 5525.10 and 5525.15. Plaintiff does not argue that there is statutory authority to bring this taxpayer action; thus, plaintiff must satisfy the standard as set forth in *State ex rel. Masterson v. Ohio Racing Comm.* (1954), 162 Ohio St. 366, 55 O.O. 215, 123 N.E.2d 1:

" 'Even in the absence of legislation, a taxpayer has a right to call upon a court of equity to interfere to prevent the consummation of a wrong such as occurs when public officers attempt to make an illegal expenditure of public money, or to create an illegal debt, which he, in common with other property holders of the taxing district, may otherwise be compelled to pay.' [Citing 39 Ohio Jurisprudence 2, Section 2.]

"It is equally fundamental that at common law and apart from statute, a taxpayer can not bring an action to prevent the carrying out of a public contract or the expenditure of public funds unless he has some special interest therein by reason of which his own property rights are put in jeopardy. In other words, private citizens may not restrain official acts when they fail to allege and prove damage to themselves different in character from that sustained by the public generally. 39 Ohio Jurisprudence, 22, Section 12; 52 American Jurisprudence 3, Section 3." *Id.* at 368, 55 O.O. at 216, 123 N.E.2d at 2.

Thus, the Supreme Court of Ohio has recognized that where a public project is funded from a special fund rather than from the general tax revenues, the mere payment of taxes does not confer standing upon a taxpayer to challenge the public project. Rather, the court required that a taxpayer demonstrate a special interest whereby his own property rights are placed in jeopardy and that the taxpayer will sustain damage different in character than that sustained by the general public.

Similarly, in *State ex rel. Connors v. Ohio Dept. of Transp.* (1982), 8 Ohio App.3d 44, 8 OBR 47, 455 N.E.2d 1331, this court, considering whether contractors had standing as taxpayers to challenge a contract containing allegedly invalid bid conditions, held that mere payment of gasoline taxes did not confer taxpayer standing to challenge a public project funded from gasoline taxes. This court noted:

" [M]erely paying gasoline taxes does not give these plaintiffs standing under *Masterson*, which requires that the taxpayers have a special interest in the public funds involved in the litigation which thereby prevents the litigation of abstract or personal legal propositions." *Id.* at 47, 8 OBR at 50–51, 455 N.E.2d at 1334.

In support of its standing argument, plaintiff relies on cases involving challenges to expenditures from the state's general revenue fund rather than from

special funds. In *State ex rel. United McGill Corp. v. Hamilton* (1983), 11 Ohio App.3d 102, 11 OBR 155, 463 N.E.2d 405, this court, finding that a taxpayer had standing to challenge a public expenditure from the general revenue fund, expressly noted that "[b]ecause there is no special fund involved here as in *Masterson,* but, instead, only the state's general revenue fund to which plaintiff contributed as a taxpayer, plaintiff met the special interest requirements of *Masterson.*" *Id.* at 103, 11 OBR at 155–156, 463 N.E.2d at 406. In *Corbett v. Ohio Bldg. Auth.* (1993), 86 Ohio App.3d 44, 49, 619 N.E.2d 1145, 1148, this court found taxpayer standing for a challenge to the issuance of bonds which were to be amortized by rent paid from the state's general revenue fund. Further, the Ohio Supreme Court, in *Racing Guild of Ohio, Local 304 v. State Racing Comm.* (1986), 28 Ohio St.3d 317, 28 OBR 386, 503 N.E.2d 1025, found that contribution to the state's general revenue fund was sufficient to confer standing under *Masterson* to challenge expenditures from the general revenue fund.

In contrast, the present case involves plaintiff's challenge to a project funded exclusively from federal gasoline taxes, not from Ohio's general revenue fund or any other state fund. Thus, under *Masterson,* because the project is funded from federal gasoline taxes, a "special fund," and not from general revenue funds, plaintiff cannot bring an action to prevent the carrying out of a public contract or the expenditure of public funds unless plaintiff has demonstrated a special interest therein whereby its own property rights are placed in jeopardy and that it will sustain damage different in character from that sustained by the public generally.

Plaintiff contends that it has standing to seek to enjoin performance of the contract executed between defendant and Tri–State because plaintiff purchased gasoline for a mall truck and some mall equipment and paid federal gasoline taxes on these purchases. At the preliminary injunction hearing, plaintiff presented evidence that it had purchased approximately $100 worth of gasoline. Plaintiff argues that simply by purchasing gasoline and paying taxes thereon, it has contributed to the fund from which the challenged expenditures will come and thus has sufficient special interest to challenge the contract between defendant and Tri–State. However, the mere fact that plaintiff has paid gasoline taxes is insufficient to confer standing under both *Masterson* and *Connors.*

As plaintiff has not shown any special interest in the funds used to fund the contract it challenges and has failed to show any damage different from that which would be sustained by the public in general as a result of the project, plaintiff has failed to meet the test of standing set forth in *Masterson.* Thus, plaintiff's claims under R.C. 5525.10 and 5525.15 were properly dismissed for lack of standing.

■ We next address plaintiff's argument regarding its status as a "person" to assert an action under the open meetings law. Plaintiff argues that it has

standing to bring an action under R.C. 121.22 because it falls within the definition of "person" under R.C. 121.22(I)(1), which provides that "[a]ny person may bring an action to enforce the provisions of this section." Plaintiff contends that this language allows it to seek redress for a violation of the statute without any need to show injury or stake in the controversy. R.C. 121.22(I)(1) further states, in part:

"Upon proof of a violation or threatened violation of this section in an action brought by any person, the court of common pleas shall issue an injunction to compel the members of the public body to comply with its provisions."

The precise issue before us was determined by the Third District Court of Appeals in *Thompson v. Joint Twp. Dist. Mem. Hosp.* (June 23, 1983), Auglaize App. No. 2–82–8, unreported, 1983 WL 7286, wherein a taxpayer sought to enjoin the construction of a public work under the open meetings law. The court, finding that the taxpayer did not have standing to bring such an action despite the "any person" language used in R.C. 121.22(I)(1), construed the "any person" language as meaning "any aggrieved person." In other words, the court concluded that the party bringing such an action must have a "personal stake" in the controversy, so that the case can be viewed in an adversarial context. The court cited the general proposition found in *Masterson, supra,* that "a taxpayer can not bring an action to restrain official acts unless damages are 'different in character from that sustained by the public generally.' " *Id.* at 4.

Similarly, in *Forman v. Blaser* (Aug. 8, 1988), Seneca No. 13–87–12, unreported, 1988 WL 87146, the court followed *Thompson* and held that the "any person" language must be construed as meaning "any aggrieved person." The *Forman* court concluded that "[t]he term 'aggrieved' does not have the same connotation as the term 'affected,' but connotes some injury to person or property." *Id.* at 6.

In the instant case, plaintiff lacks standing to assert its open meetings law claim for the same reasons that it lacks standing to bring its claims under R.C. 5525.10 and 5525.15; it offered no evidence to support any showing of an injury different in character from that sustained by the general public. Plaintiff did not attend the meeting in question, did not testify at the hearing to establish any injury or threat, and did not allege any particular financial interest in the challenged contract. In short, plaintiff has no "personal stake" in the controversy and is not an "aggrieved person." Thus, to the extent that the trial court dismissed the complaint for lack of standing to assert the open meetings claim, we find no error in its determination.

Accordingly, the first assignment of error is not well taken.

By the second and third assignments of error, plaintiff contends that the trial court erred in determining that defendant did not violate R.C. 5525.10, 5525.15 or

121.22. However, a review of the October 13, 1994 judgment entry reveals that the trial court never reached these issues. The trial court, having determined that plaintiff lacked standing to assert such claims, specifically concluded that it "need not explore the remaining issues." Thus, we find that the issues regarding defendant's alleged violation of R.C. 5525.10, 5525.15 and 121.22 were not specifically ruled upon by the trial court, and are therefore not properly before this court for review.

Accordingly, the second and third assignments of error are not well taken.

Finally, there is before this court a motion to dismiss plaintiff's appeal, filed by defendant on March 28, 1995. In the motion, defendant argues that the issues and controversies presented in this action have become moot, as construction on the project has been substantially completed. Having determined that plaintiff lacks standing to bring this action either as a taxpayer or as a "person" under R.C. 121.22, we need not address defendant's motion.

Accordingly, defendant's motion to dismiss this appeal is overruled.

For the foregoing reasons, the first, second and third assignments of error are overruled, defendants' motion to dismiss is overruled, and the judgment of the Franklin County Court of Common Pleas is affirmed.

*Judgment affirmed.*

DESHLER and REILLY, JJ., concur.

ARCHER E. REILLY, J., retired, of the Tenth Appellate District, sitting by assignment.