The STATE ex rel. MASON, Appellant,

v.

STATE EMPLOYMENT RELATIONS BOARD et al., Appellees.

[Cite as *State ex rel. Mason v. State Emp. Relations Bd.* (1999), 133 Ohio App.3d 213.]

Court of Appeals of Ohio,
Tenth District, Franklin County.

No. 98AP–780.

Decided April 20, 1999.

214

*Spater, Gittes, Schulte & Kolman* and *Frederick M. Gittes,* for appellant.

*Betty D. Montgomery,* Attorney General, and *Peter M. Thomas,* Assistant Attorney General, for appellees.

KENNEDY, Judge.

Appellant, Chauncey Mason, appeals the judgment of the Franklin County Court of Common Pleas granting summary judgment to appellees, State Employment Relations Board ("SERB"), SERB Chairwoman Sue Pohler, SERB board member Jonathon McGee, and SERB Executive Director Jeffrey Taylor.

Appellant brings this action under the Ohio Sunshine Law ("Sunshine Law"). The Sunshine Law, codified under R.C. 121.22, requires public bodies like SERB to hold deliberations and to make decisions on official business in meetings open to the public. Additionally, the Sunshine Law provides, in part, that any person may seek an action in court to compel a public body to comply with its provisions. R.C. 121.22(I)(1).

Appellant asserts that appellees deliberated and decided upon issues in a series of meetings closed to the public in violation of the Sunshine Law. Appellant seeks preliminary and permanent injunctions prohibiting appellees from conducting deliberations and making decisions on official business in meetings closed to the public. Additionally, appellant seeks a writ of mandamus requiring appellees to publish the board members' concurring and dissenting opinions in the agency's official reporter, even when no majority opinion is published.

In granting summary judgment for appellees, the trial court concluded that appellant did not have standing to assert an action under the Sunshine Law because he did not have a personal stake in the matters discussed in the meetings closed to the public. In so deciding, the trial court relied upon our decision in *Ohio Valley Mall Co. v. Wray* (1995), 104 Ohio App.3d 629, 662 N.E.2d 1108. In *Wray*, we held that only an aggrieved person has standing to seek enforcement of the Sunshine Law. Additionally, the trial court concluded that appellant could not assert the Sunshine Law claim against appellees under the theory that members of a government body are prohibited from suing fellow members with respect to decisions or conduct in which he or she participated.

The trial court also concluded that it could not compel appellees to publish appellant's concurring and dissenting opinions. The court so held because appellant failed to point to any authority that imposes a clear legal duty on appellees to publish these opinions in SERB's official reporter.

Appellant appeals, assigning the following assignments of error:

"I. The trial court erred in holding that a SERB board member does not have standing to bring an action to enforce the procedural requirements of the Open Meetings Act.

"II. The trial court erred by holding that appellant has no clear legal duty to publish his concurring or dissenting opinions in SERB's official reporter or other publication."

■ In his first assignment of error, appellant criticizes our decision in *Wray*. In *Wray*, we examined whether a taxpayer had standing to assert an action under the Sunshine Law to challenge the Ohio Department of Transportation's non-publicized and closed meeting deliberations over contract bids. *Wray*, 104 Ohio App.3d at 634–635, 662 N.E.2d at 1110–1112. We acknowledged that the Sunshine Law provides that "any person" may bring an action to enforce the provisions of the law. *Id.*, citing R.C. 121.22(I)(1). However, we held that the "any person" language in R.C. 121.22(I)(1) means "any aggrieved person." *Id.* Therefore, we held that the taxpayer did not have standing to assert an action under the Sunshine Law because the taxpayer was neither aggrieved by the Ohio Department of Transportation's decision nor had a personal stake in the controversy deliberated upon in the closed meeting. *Id.* at 635, 662 N.E.2d at 1111–1112. We concluded that the taxpayer demonstrated no injury different from that sustained by the general public. *Id.*

■ Appellant asserts that we should reexamine *Wray* and conclude that any person has standing to seek enforcement of the Sunshine Law regardless of whether he or she is an aggrieved party as a result of an official action deliberated or decided upon in a closed meeting. We agree and, in so doing,

overrule our decision in *Wray*, which held that the "any person" language in R.C. 121.22(I)(1) means "any aggrieved person."

Under common-law principles, a person has standing to assert an action in court so long as that person demonstrates that he or she has been aggrieved and has a personal stake in the outcome or controversy before the court. *Middletown v. Ferguson* (1986), 25 Ohio St.3d 71, 75–76, 25 OBR 125, 128–130, 495 N.E.2d 380, 384–385, quoting *Sierra Club v. Morton* (1972), 405 U.S. 727, 731–732, 92 S.Ct. 1361, 1364–1365, 31 L.Ed.2d 636, 640–642. However, the legislature may confer standing by statute. *Id.* In this case, based on the reasons below, we conclude that the Ohio legislature conferred standing on "any person" to seek enforcement of the Sunshine Law under R.C. 121.22(I)(1). Additionally, based on the reasons below, we conclude that our decision in *Wray* incorrectly inserted common-law standing principles in cases where a person seeks enforcement of the Sunshine Law.

When interpreting a statute, a court shall not ignore its plain and unambiguous language. *State v. Krutz* (1986), 28 Ohio St.3d 36, 38, 28 OBR 96, 97–98, 502 N.E.2d 210, 211–212. In this case, as noted above, R.C. 121.22(I)(1) provides that "any person" may bring an action to enforce the provisions of the Sunshine Law. The "any person" language in R.C. 121.22(I)(1) is plain and unambiguous and aids us in our interpretation that "any person" is not to be construed to mean "any aggrieved person."

The statute contains clear and unambiguous language that injury is to be "conclusively and irrebuttably presumed" upon proof of violation or threatened violation. R.C. 121.22(I)(3). Thus, because the statute specifically presumes injury, it would be incorrect to insert common-law standing principles, which require a showing of injury, before a person may seek enforcement of the Sunshine Law.

Further, a court must also consider the statute's legislative intent when construing it. *State ex rel. Cincinnati Post v. Cincinnati* (1996), 76 Ohio St.3d 540, 543, 668 N.E.2d 903, 905–906, citing *State v. S.R.* (1992), 63 Ohio St.3d 590, 594, 589 N.E.2d 1319, 1322–1323. When construing a statute, a court must avoid adopting a construction of a statute that would circumvent the evident purpose of its enactment. *Cincinnati,* at 543, 668 N.E.2d at 905–906, quoting *Daiquiri Club, Inc. v. Peck* (1953), 159 Ohio St. 52, 55, 50 O.O. 26, 28, 110 N.E.2d 705, 706–707.

The Ohio legislature specified its intent and purpose in enacting the current Sunshine Law in the preamble. R.C. 121.22(A). The preamble specifies that the Sunshine Law generally requires public officials to take official action and to conduct all deliberations upon official business only in open meetings. *Id.*

Additionally, the legislative history of the Sunshine Law aids us in determining the legislative intent and purpose of this statute.

In 1975, the Ohio legislature enacted the current version of the Sunshine Law in response to the Ohio Supreme Court's decision in *Beacon Journal Publishing Co. v. Akron* (1965), 3 Ohio St.2d 191, 32 O.O.2d 183, 209 N.E.2d 399. See Ohio Legislative Service Commission, Summary of 1975 Enactments, January–October 204. In 1965, the Ohio Supreme Court held that the then existing Sunshine Law permitted a public body to deliberate upon a proposed course of action in closed session so long as the public body adopted or passed a resolution, rule, regulation or formal action in open session. *Beacon Journal Publishing.* The revised Sunshine Law statute eliminates the Ohio Supreme Court's interpretation in *Beacon Journal Publishing.* Ohio Legislative Service Commission, Summary of 1975 Enactments, January–October 204. Additionally, as noted above, the revised statute specifies that any person may bring an action in the court of common pleas to enforce the provisions of the Sunshine Law. *Id.* at 206. The original 1954 version of the Ohio Sunshine Law did not contain such a provision. See 125 Ohio Laws 534.

The Ohio Supreme Court addressed the purpose behind the Ohio Sunshine Law in *White v. Clinton Cty. Bd. of Commrs.* (1996), 76 Ohio St.3d 416, 418–421, 667 N.E.2d 1223, 1225–1228. According to the Ohio Supreme Court, the Sunshine Law prevents important decisions from being made behind closed doors. *Id.* at 420, 667 N.E.2d at 1226–1227. Thus, the Ohio Supreme Court asserted that the Sunshine Law enables the public to observe and understand the actions of their elected officials. *Id.* at 418, 667 N.E.2d at 1225. According to the Ohio Supreme Court, in referencing the writings of James Madison, these principles are a bedrock of our society and are essential to our popular form of government:

" 'A popular Government, without popular information, or the means of acquiring it, is but a Prologue to a Farce or a Tragedy; or, perhaps, both. Knowledge will forever govern ignorance; And a people who mean to be their own Governors, must arm themselves with the power which knowledge gives.' " *Id.* at 419, 667 N.E.2d at 1226, quoting The Complete Madison, His Basic Writings (1988), 337 (Letter to W.T. Barry, August 4, 1822).

■ Therefore, we find that the legislative intent and purpose of the current Ohio Sunshine Law is to enable any member of the general public to seek enforcement of the statute when public officials circumvent the public's right to observe public officials as they conduct official business. Accordingly, a conclusion that any person may seek enforcement of the Sunshine Law regardless of whether he or she has been aggrieved or has a stake in the outcome or controversy conforms with the Ohio legislature's intent and purpose in enacting the current version of the Sunshine Law.

Our previous conclusion in *Wray*, that the "any person" language in R.C. 121.22(I)(1) must be construed as "any aggrieved person," fails to recognize the Ohio legislature's intent and purpose in enacting the current version of the Sunshine Law. Additionally, such a conclusion is contrary to the statute's requirement that courts are to construe the Sunshine Law liberally and in favor of open meetings. See R.C. 121.22(A).

For example, under the "any aggrieved person" definition, no member of the public would have standing to seek enforcement of the Sunshine Law after a public body holds or threatens to hold secret deliberations on proposed city budgets. Because a member of the public may not at the time of the meeting have a personal stake in the allocations contained in an annual budget, a claim that he or she has standing to assert, the Sunshine Law claim would fail.

Similarly, under the "any aggrieved person" definition, criminal ordinances or their penalty provisions could be passed by a city council following closed, secret deliberations and no immediate action could be taken under the Sunshine Law, because nobody would be affected by the criminal provisions until the provisions were enforced. If the prosecution of the criminal ordinance occurs beyond the time limit provisions of the Sunshine Law, nobody would ever be able to challenge the decision under the Sunshine Law. See R.C. 121.22(I)(1) (noting that an action shall be brought within two years after the date of the alleged violation or threatened violation).

█ Finally, courts must construe statutes to avoid unreasonable or absurd results. *Cincinnati*, 76 Ohio St.3d at 544, 668 N.E.2d at 906–907. The Sunshine Law provides for injunctive relief for future meetings involving official business. See R.C. 121.22(I)(1). To construe the "any person" language in R.C. 121.22(I)(1) as meaning "any aggrieved person" would lead to an unreasonable and absurd result because a person is not able to know whether he or she will be aggrieved as a result of meetings that will occur in the future.

Similarly, the statute provides for injunctive relief for "threatened" violations of the Sunshine Law. R.C. 121.22(I)(1). To conclude that a person must show that he or she is aggrieved due to a "threatened" closed and secret meeting leads to the best example of an absurd result. It is unlikely that the public body, that is about to meet in secret, will publish an agenda detailing matters to be discussed in the "threatened" secret and closed meeting and, if this is true, how would a person ever prove that he or she is "aggrieved"?

Our decision, that the "any person" language in the Sunshine Law not be construed as meaning "any aggrieved person," is consistent with decisions from other courts of appeals in this state. For example, the Sixth District Court of Appeals examined a case where, under common-law standing principles, the

plaintiff had not been injured by actions taken during a closed meeting. *Vermilion Teachers' Assn. v. Vermilion Local School Dist. Bd. of Edn.* (1994), 98 Ohio App.3d 524, 531, 648 N.E.2d 1384, 1388–1389. The court held that the issue of actual injury was irrelevant to the standing issue under the Sunshine Law. *Id.* at 531, 648 N.E.2d at 1388–1389. Rather, the court asserted that R.C. 121.22(I)(1) grants standing to any person to bring an action under the Sunshine Law. *Id.* Similarly, the Eleventh District Court of Appeals held that a person asserting an action under the Sunshine Law is not required to show that he or she has been aggrieved, because irreparable harm and prejudice shall be conclusively and irrebuttably presumed. *Black v. Mecca Twp. Bd. of Trustees* (1993), 91 Ohio App.3d 351, 355, 632 N.E.2d 923, 925.

Moreover, the Ohio Supreme Court has allowed members of the general public or the media to bring actions in court to seek enforcement of the Sunshine Law. See, *e.g., Cincinnati; White; State ex rel. The Fairfield Leader v. Ricketts* (1990), 56 Ohio St.3d 97, 564 N.E.2d 486. In none of the cases did the media or members of the public make any claim of any special injury or interest beyond that of being a member of the public desiring a public body to comply with the Sunshine Law. See *Cincinnati,* 76 Ohio St.3d at 540, 668 N.E.2d at 903–904; *White,* 76 Ohio St.3d at 416, 667 N.E.2d 1223; *Ricketts,* at 97, 564 N.E.2d 486. Yet, in these cases, the Ohio Supreme Court never questioned the standing of the members of the public or the media to assert a claim under the Sunshine Law. See *Cincinnati,* at 540, 668 N.E.2d 903; *White,* at 416, 667 N.E.2d at 1224; *Ricketts,* at 97, 564 N.E.2d at 487–488.

We hold that any person may bring an action to enforce the provisions of the Sunshine Law. Thus, we hold that a person seeking action to enforce the Sunshine Law need not demonstrate that he or she has been aggrieved or has a personal stake in the outcome or controversy in an official action of a public body deliberated or decided upon in a closed meeting. Accordingly, we overrule the part of our decision in *Wray* that held that the "any person" language in R.C. 121.22(I)(1) was construed to mean "any aggrieved person."

■ In addition, we hold that the Sunshine Law affords standing to an individual member of the public body to enforce the statute's procedural requirements. Under the rationale discussed above, a conclusion that an individual member of the public body is not "any person" and may not enforce statutory provisions of the Sunshine Law would be contrary to the clear and unambiguous language in the statute and the legislative intent and purpose of the statute, and would lead to an absurd result. Indeed, we find that the procedural requirements of the Sunshine Law are most appropriately enforced by an individual member of the governing board or agency. A member of a public body, such as appellant, is best situated to know that there is an illegal meeting being held in

the dark that requires light and legality. A board member of a public body should not be left with the unenviable choice of failing to discharge his or her duties by refusing to participate in the business of the public body or participating in an illegal meeting. Here, we conclude that appellant made the correct and only legal choice available to him, an action under R.C. 121.22.

Therefore, based on the reasons noted above, we sustain appellant's first assignment of error. In so concluding, we acknowledge that the trial court was adhering to precedent established in *Wray* when rendering its decision in this case.

In his second assignment of error, appellant asserts that the trial court erred in concluding that appellees have no clear legal duty to publish appellant's concurring and dissenting opinions in the administrative agency's official reporter. Appellant argues that the trial court improperly granted summary judgment in favor of appellees on his request for a writ of mandamus compelling appellees to publish his concurring and dissenting opinions, even when no majority opinion is published. We disagree.

According to Civ.R. 56, a court may grant summary judgment if (1) there is no genuine issue of material fact, (2) the moving party is entitled to judgment as a matter of law, and (3) reasonable minds can come to but one conclusion and, viewing the evidence most strongly in favor of the nonmoving party, that conclusion is adverse to the nonmoving party. *Bostic v. Connor* (1988), 37 Ohio St.3d 144, 524 N.E.2d 881; *Temple v. Wean United, Inc.* (1977), 50 Ohio St.2d 317, 327, 4 O.O.3d 466, 472, 364 N.E.2d 267, 274. When reviewing the grant of a summary judgment motion, an appellate court reviews the decision independently, or *de novo*. *Midwest Specialties, Inc. v. Firestone Tire & Rubber Co.* (1988), 42 Ohio App.3d 6, 536 N.E.2d 411; *Lyon Financial Serv., Inc. v. C&S Lounge & Carry Out* (Apr. 22, 1997), Franklin App. No. 96APE08–1127, unreported, 1997 WL 202228.

A court may grant a writ of mandamus if the person requesting the writ demonstrates (1) that he or she has a clear legal right to the relief requested, (2) that respondents are under a clear legal duty to perform the acts requested, and (3) that the person requesting the writ has no plain and adequate remedy in the ordinary course of the law. *State ex rel. Berger v. McMonagle* (1983), 6 Ohio St.3d 28, 29, 6 OBR 50, 50–51, 451 N.E.2d 225, 226–227.

Neither SERB's enabling statute, R.C. Chapter 4117, the Ohio Administrative Procedure Act, R.C. Chapter 119, nor SERB's administrative rules, Ohio Adm. Code Chapter 4117, compel appellees to publish opinions or dictate procedures upon which appellees would decide to publish opinions in SERB's official reporter. Therefore, we conclude that appellees have no legal duty to publish any

opinion, in particular, a dissenting or concurring opinion, even when no majority opinion is published.

Therefore, we agree with the trial court that appellant failed to demonstrate that he has a clear legal right to the relief he is requesting or that appellees are under a clear legal duty to publish concurring and dissenting opinions, even when no majority opinion is published. Thus, we overrule appellant's second assignment of error.

Appellant's first assignment of error is sustained, and appellant's second assignment of error is overruled. The judgment of the trial court granting summary judgment in favor of appellees in regard to appellant's request for a writ of mandamus compelling SERB to publish appellant's concurring and dissenting opinions is affirmed, and the judgment granting summary judgment in favor of appellees in regard to appellant's action under the Sunshine Law is reversed.

*Judgment affirmed in part*
*and reversed in part.*

LAZARUS, P.J., concurs.

DESHLER, J., concurs separately.

DESHLER, Judge, concurring separately.

While I concur in the judgment rendered today, I do not agree with the majority that, in reaching a judgment, we must overrule our earlier decision in *Ohio Valley Mall Co. v. Wray* (1995), 104 Ohio App.3d 629, 662 N.E.2d 1108. I still believe that only "any aggrieved person" has standing to assert a violation of R.C. 121.22, the so-called "Sunshine Law." However, in the case before us, appellant clearly had standing as an aggrieved party, as he was a member of the decision-making body alleged to have violated the statute. Thus, appellant had not only participated in official activity imposed by law upon the State Employment Relations Board ("SERB"), but he had a special interest in seeing to it that deliberations of this public body were in conformity with law. Thus, under the facts, appellant was not just "any person" and was directly involved in the process being challenged.

This court's earlier decision in *Wray* should remain intact, as I do not agree with the majority that R.C. 121.22 must be construed to allow anyone, aggrieved or not, to challenge a public body's efforts as violative of the Sunshine Law.

Because I believe appellant had standing in his own right to challenge the activity of SERB, as violative of the "Sunshine Law," I agree with the judgment

of the court, but without overruling our decision in *Wray*. Any substantive change in R.C. 121.22 should come from the legislature's amendment of the statute.