NOTICE: This opinion is subject to motions for reargument under V.R.A.P. 40 as well as formal revision before publication in the Vermont Reports. Readers are requested to notify the Reporter of Decisions by email at: JUD.Reporter@vermont.gov or by mail at: Vermont Supreme Court, 109 State Street, Montpelier, Vermont 05609-0801, of any errors in order that corrections may be made before this opinion goes to press.

2019 VT 41

No. 2018-247

| | |
|---|---|
| Jeffrey Severson | Supreme Court |
| | |
| | On Appeal from |
| v. | Superior Court, Chittenden Unit, |
| | Civil Division |
| | |
| City of Burlington & Burlington Conservation Board | February Term, 2019 |

Robert A. Mello, J.

Kevin E. Brown of Langrock Sperry & Wool, LLP, Middlebury, for Plaintiff-Appellant.

Kimberlee J. Sturtevant and Nicholas J. Lopez, Assistant City Attorneys, Burlington, for Defendant-Appellee City of Burlington.

PRESENT: Reiber, C.J., Skoglund, Robinson, Eaton and Carroll, JJ.

¶ 1.     **SKOGLUND, J.**   Appellant Jeffrey Severson appeals the trial court's decision to grant appellees'—the City of Burlington (the City) and the Burlington Conservation Board (the Board)—motion to dismiss pursuant to Vermont Rule of Civil Procedure 12(b)(1) and (6). Severson argues that the trial court erred when it determined he, as a member of the Board, did not have standing because he did not allege an injury that is actionable under Vermont's Open Meeting Law. 1 V.S.A. § 314(b). We find that dismissal of Severson's claim was proper, and thus affirm.

¶ 2.     The Board was established in 1989 to advise the City on matters regarding natural resource conservation and environmental protection. It is an advisory committee to the Burlington Planning Commission for certain planning matters and to the Burlington Development Review

Board for certain project applications—the Board does not have final-approval authority for any of the plans or applications it reviews. The Burlington City Counsel appoints the nine members of the Board, and Severson has served as a member of the Board for several years. It is undisputed that the Board is a "public body" and is thus subject to the requirements of the Open Meeting Law. See 1 V.S.A. § 310(3) (" 'Public body' means any board, council, or commission of the State or one or more of its political subdivisions . . . .").

¶ 3.     The Burlington Town Center Project (the Project) is a large real estate project that proposed to redevelop the downtown district of the City. The Board, as the body responsible for advising the City on matters regarding resource conservation and environmental protection, met several times to review various aspects of the Project's permit application. A final review hearing for the Project was scheduled and held on January 9, 2017 from 5:30 p.m. until 8:00 p.m. Prior to the meeting, the Board issued a public notice of its agenda. The notice informed the public that the meeting would be held at the Fletcher Free Library, instead of city hall. It also noted that "[t]he library closes at 6:00 P.M. The doors will be locked at that time. Arrive before 6:00 P.M." At the bottom of the notice, there was a phone number to call the City's human resources department "[f]or accessibility information or alternative formats." No members of the public, other than one reporter, attended the Board's meeting on January 9. At the conclusion of the Board's final review of the Project, Severson cast the only vote against the Project. The City ultimately granted zoning approval to the Project. Several residents of the City appealed the City's approval to the Environmental Division of the Superior Court, but settled said appeal with the Project's developer.

¶ 4.     In early October 2017, nearly ten months after the meeting, Severson emailed the Board's chair and raised concerns over the January 9 meeting. He asserted that the meeting had violated the Open Meeting Law because it had occurred behind locked doors. Severson requested that the Board cure the violation by holding a meeting in compliance with the Open Meeting Law to conduct a review of the most current version of the Project's plan and to ratify the other, non-

2

Project related Board actions taken at the January 9 meeting. The Board met on November 13, 2017, during which it reviewed a memorandum prepared by the City's legal counsel and the relevant facts of Severson's allegations, including information on the staffing procedure of the library on nights when public meetings were scheduled there. The Board determined that no Open Meeting Law violation had occurred.

¶ 5. After the Board's determination, Severson filed suit against the Board and the City, seeking declaratory and injunctive relief on the ground that the Board violated § 314(c) of the Open Meeting Law by conducting its final review of the Project behind locked doors and by notifying the public in advance of the meeting that, in order to attend, any member of the public needed to arrive prior to 6 p.m. The City and the Board moved to dismiss the complaint pursuant to Vermont Rule of Civil Procedure 12(b)(1) and (6), arguing that Severson did not have standing and failed to state a claim upon which relief could be granted, and noting that Severson had failed to produce any evidence that a member of the public attempted to gain access to the meeting but was locked out.

¶ 6. In a written decision, the trial court granted the City and the Board's motion to dismiss, finding that Severson did not allege an injury that was actionable under the Open Meeting Law. The trial court determined that Severson had "no standing under the Open Meeting Law to bring an action for the speculative injuries of unknown members of the public." Severson filed a timely appeal of the trial court's order to this Court.

¶ 7. The central question before us on appeal is whether Severson, as a member of the public body that allegedly violated § 312(a) and (h) of the Open Meeting Law, qualifies as "any person aggrieved" entitled to seek enforcement of the Open Meeting Law in the wake of the public body's refusal to recognize, and correct, the alleged violation. And, if we find that members of public bodies do have a legally cognizable interest under the Open Meeting Law, we must then determine if Severson has standing in this particular instance.

3

¶ 8.     Severson argues that: (1) the trial court improperly failed to acknowledge that a member of a public body has a cognizable interest under 1 V.S.A. §§ 312 and 314 to have the public body's meeting kept open to the public at all times and to hear the comments and questions that the public might offer on the matter under consideration by the public body; (2) nothing in the statutory language of the penalty and enforcement provisions, or the public policy that infuses the Open Meeting Law, supports the restrictive application of aggrieved status advanced by the City, the Board, and the court below; and (3) whether the January 9 meeting violated the Open Meeting Law does not depend upon proof that the public notice, which advised the public to arrive before the locking of the library doors, dissuaded any particular person from attending the meeting, or that the locking of the library doors prevented any particular person from gaining access to the meeting.[1]  In response, the City and the Board maintain that the trial court properly dismissed Severson's complaint for lack of standing and failure to state a claim because he has failed to demonstrate that he suffered a legally cognizable injury-in-fact or to produce evidence that any person, including he himself, was aggrieved when they attempted to attend the meeting but could not because of the locked doors.  We agree that the trial court erred when it failed to acknowledge that a member of a public body has a cognizable interest under the Open Meeting Law.  But nevertheless, we affirm because Severson's pleadings fall short of standing requirements here.

¶ 9.     Standing is a jurisdictional requirement, and therefore "[w]ithout standing, the court has no jurisdiction over a petition for declaratory relief."  <u>Bischoff v. Bletz</u>, 2008 VT 16,

---

[1] Severson offers the additional argument that, based on the treatment he received from his fellow members of the Board, he qualifies as "any person aggrieved" under the Open Meeting Law.  Severson posits that if the Board is permitted to "intimidate, abuse, harass, insult, and/or excoriate a complainant for having the temerity to notify the public body of its violation . . . , public bodies will: (1) become emboldened to ignore the mandates of the Open Meeting Law going forward; and (2) cause would-be complainants to acquiesce to violations and to remain silent."  This argument has no merit.  Severson's interpersonal interactions with his professional colleagues are not subject to the Open Meeting Laws, even if the behavior he alleges amounts to unprofessional bullying.

4

¶ 15, 183 Vt. 235, 949 A.2d 420. Because standing is a jurisdictional requirement, "our review of dismissal for lack of standing is the same as that for lack of subject matter jurisdiction"—de novo. U.S. Bank Nat'l Ass'n v. Kimball, 2011 VT 81, ¶ 12, 190 Vt. 210, 27 A.3d 1087. A de novo review requires that we accept "all uncontroverted factual allegations . . . as true" and construe those facts "in the light most favorable to the nonmoving party." In re Guardianship of C.H., 2018 VT 76, ¶ 6, __ Vt. __, 194 A.3d 1174 (quotation omitted). In addition, we "will assume the truth of . . . all reasonable inferences that may be derived from the pleadings." Elkins v. Microsoft Corp., 174 Vt. 328, 330, 817 A.2d 9, 12 (2002). "A motion to dismiss should be granted only when it is beyond doubt that there exist no facts or circumstances that would entitle the nonmoving party to relief." Samis v. Samis, 2011 VT 21, ¶ 9, 189 Vt. 434, 22 A.3d 444. "A plaintiff must allege facts sufficient to confer standing on the face of the complaint." Parker v. Town of Milton, 169 Vt. 74, 76, 726 A.2d 477, 479 (1998) (quotation omitted). Failure to do so must therefore result in dismissal for lack of jurisdiction.

¶ 10. "For standing, plaintiffs must present a real—not merely theoretical—controversy involving the threat of actual injury to a protected legal interest rather than merely speculating about the impact of some generalized grievance." Brod v. Agency of Nat. Res., 2007 VT 87, ¶ 9, 182 Vt. 234, 936 A.2d 1286 (quotations omitted). In order to meet this burden, a plaintiff "must show (1) injury in fact, (2) causation, and (3) redressability." Id. (quotation omitted). "The injury must be an 'invasion of a legally protected interest,' not a generalized harm to the public." Parker, 169 Vt. at 78, 726 A.2d at 480 (quoting Lujan v. Defenders of Wildlife, 504 U.S. 555, 560 (1992)); see also Schievella v. Dep't of Taxes, 171 Vt. 591, 592, 765 A.2d 479, 481 (2000) (mem.) (explaining that plaintiff is "prohibited from raising the rights of others or general grievances").

¶ 11. When seeking standing under a statute, a plaintiff "must plead sufficient injury to a protected interest to show that they are aggrieved under the statute and therefore have standing to challenge any alleged violation of the law." Town of Brattleboro v. Garfield, 2006 VT 56, ¶ 16,

5

180 Vt. 90, 904 A.2d 1157. Further, when interpreting statutory language, this Court does so de novo, with the primary goal "to discern and implement the intent of the Legislature." Patnode v. Urette, 2015 VT 70, ¶ 7, 199 Vt. 306, 124 A.3d 430 (quotation omitted). "We look first to the plain language of the statute, and, if this is insufficient to determine legislative intent, we consider the broad subject matter of the statute, its effects and consequences, and the purpose and spirit of the law." In re Swanton Wind LLC, 2018 VT 141, ¶ 7, __ Vt. __, 204 A.3d 635 (quotation omitted).

¶ 12. Vermont's Open Meeting Law "implements the command of Chapter I, Article 6 of the Vermont Constitution that officers of government are 'trustees and servants' of the people and are 'at all times, in a legal way, accountable to them.' " Trombley v. Bellows Falls Union High Sch. Dist. No. 27, 160 Vt. 101, 104, 624 A.2d 857, 860 (1993) (quoting Vt. Const. ch. I, art. 6). The Law aims to keep "elected officers accountable by, among other ways, requiring meetings of a public body to be 'open to the public at all times,' except when in executive session, . . . and by requiring that the public be given a 'reasonable opportunity to express its opinion' on matters being considered." Garfield, 2006 VT 56, ¶ 16 (quoting 1 V.S.A. § 312(a), (h)) (citation omitted).

¶ 13. Section 314(c) reads: "the Attorney General or any person aggrieved by a violation of the provisions of this subchapter may bring an action . . . for appropriate injunctive relief or for a declaratory judgment." "Aggrieved" is defined as "(Of a person or entity) having legal rights that are adversely affected; having been harmed by an infringement of legal rights." Aggrieved, Black's Law Dictionary (10th ed. 2014); see also Person Aggrieved, Black's Law Dictionary (10th ed. 2014) (referring to definition of "aggrieved party" which is "A party entitled to a remedy"). By using "aggrieved" as a descriptor of "any person," the Legislature communicates its intent to limit who can bring a suit, granting that right to only those whose rights were infringed upon by a violation of the Open Meeting Law. Therefore, our plain-language analysis requires us to look

6

towards the provisions referenced, the harm the provisions were intended to protect against, and by whom those harms could be suffered.

¶ 14.   When reading the Open Meeting Law as a whole, it is clear that the Legislature intended the Law to protect the public's rights to keep public officials accountable by granting members of the public the right not only to hear, but also to be heard.  As Severson points out, the Law not only requires that meetings subject to the Law be open to the public, but requires that members of the public be given a reasonable opportunity to express their views on matters considered by the public body during a public meeting.  1 V.S.A. § 312(a)(1), (h).  By ensuring that members of the public can attend meetings of public bodies, the Law also confers upon members of public bodies the right to hear from members of the public, to whom they are accountable.

¶ 15.   Those who govern have every bit as much of an interest in open and transparent public meetings as those who are governed.  To do their job properly, officers of the government need to hear from members of the public on matters being considered by a public body.  Public meetings provide the opportunity for members of the public to give their input on such matters. Without the sharing of opinions and concerns, public bodies would be less able to fully and competently serve the public and construct beneficial decisions for the people.

¶ 16.   Members of public bodies also have a strong interest in ensuring that those they serve understand the basis for the decisions they make.  Public meetings put on display the information relied upon, the course of deliberations, and the articulated rationales supporting the ultimate decision.  Open meetings provide an opportunity to inform the general public about the decisions a public body makes and the execution of leadership exercised by that body.  Working in the open can go a long way to creating trust in the results.

¶ 17.   And finally, the Open Meeting Law subjects members of a public body to criminal penalties for knowing and intentional violations.  1 V.S.A. § 314(a) ("A person who is a member

7

of a public body and who knowingly and intentionally violates the provisions of this subchapter, a person who knowingly and intentionally violates the provisions of this subchapter on behalf or at the behest of a public body, or a person who knowingly and intentionally participates in the wrongful exclusion of any person or persons from any meeting subject to this subchapter shall be guilty of a misdemeanor and shall be fined not more than $500.00."). Imposition of criminal liability for the intentional violation of the Open Meeting Law is evidence of the Legislature's intent to grant members of public bodies a stake in ensuring that the public body complies with the Open Meeting Law.

¶ 18. For these reasons, the Ohio Court of Appeals' insight that members of public bodies may be the most appropriate people to enforce open-meetings laws is apt. In State ex rel. Mason v. State Emp. Relations Bd., 727 N.E.2d 181 (Ohio Ct. App. 1999), the court considered an open-meetings-law claim brought by a member of a public body seeking an injunction prohibiting the body from conducting official business in meetings closed to the public. The case is not directly on point because Ohio's open-meetings statute at issue in that case allowed "any person," as opposed to any "aggrieved" person, to bring an open-meetings claim. Id. at 184-86. But in discussing whether an individual member of a public body has standing to enforce the open-meeting law's requirements, the court emphasized:

> Indeed, we find that the procedural requirements of the Sunshine Law are most appropriately enforced by an individual member of the governing board or agency. A member of a public body, such as appellant, is best suited to know that there is an illegal meeting being held in the dark that requires light and legality. A board member of a public body should not be left with the unenviable choice of failing to discharge [their] duties by refusing to participate in the business of the public body or participating in an illegal meeting.

Id. at 186. Because the interest of a member of a public body in that body's compliance with the Open Meeting Law is as significant as that of any other member of the public, we hold that members of a public body have a cognizable interest in enforcement of the Law.

8

¶ 19. However, although we conclude that Severson, as a member of the public body that he alleges violated § 312(a) and (h) of the Open Meeting Law,[2] may qualify as "any person aggrieved" entitled to seek enforcement of the Open Meeting Law in the wake of the public body's refusal to recognize, and correct, the alleged violation, we must still hold that the trial court did not err when it granted the Board and the City's motion to dismiss Severson's suit seeking declaratory and injunctive relief. See, e.g., Alvarez v. Katz, 2015 VT 86, ¶ 7, 199 Vt. 510, 124 A.3d 839 ("We will not reverse the trial court's decision if the record below reveals any legal grounds that would justify the result." (quotation omitted)). Severson's complaint did not allege injuries that are sufficient to confer standing under the Open Meeting Law, for his allegations were of speculative injuries arising from the potential exclusion of unknown members of the public. He provided no evidence that a member of the public was actually deprived access to the meeting, or was deterred from attending the meeting, therefore violating his right to an open meeting as a member of a public body. Severson urges this Court to conclude that because there was great public interest in the Project but such low public attendance at the January 9 meeting, the reasonable inference is that at least one member of the public must have either been deprived access to the meeting due to the locked doors or deterred from attending the meeting due to the

---

[2] Because we conclude that Severson does not have standing in this case under the Open Meeting Law, we need not decide whether the Board held the January 9 meeting in violation of the Law. However, we must note that we find the meeting suspect. Section 312(a)(1) reads: "All meetings of a public body are declared open to the public at all times." (Emphasis added). It is not disputed that the Board's meetings are subject to the Open Meeting Law or that the doors to the Fletcher Free Library were locked at 6 p.m., even though the meeting continued past 8 p.m. We understand that the library maintains regular business hours and must lock its doors at a certain time, but it is unclear from the record whether the City or the Board has a formal procedure of staffing the front door of the library when meetings are held there to ensure free public access, thus functionally keeping the meeting "open." We suggest that in a future challenge the City and the Board would have to overcome a strong presumption that a meeting which occurs behind locked doors, without a designated staffer stationed at the locked doors and charged with the duty of maintaining free public access to the meeting, is not, in fact, "open to the public at all times." 1 V.S.A. § 312(a)(1).

6 p.m. arrival requirement. This inference is not reasonable based on the record before us, and thus we decline to adopt it. See Elkins, 174 Vt. at 330, 817 A.2d at 12.

¶ 20. Even taking Severson's pleadings as true, because there is no allegation here that any specific person was deprived access to the meeting, or deterred from attending the meeting, the trial court properly determined that Severson lacked standing under the Open Meeting Law and dismissed his suit.

Affirmed.

FOR THE COURT:

_____

Associate Justice